### ADOLF MELLER COMPANY

v.

### The UNITED STATES.

### No. 9–78.

United States Court of Claims.

June 13, 1979.

Walter F. Gibbons, Providence, R.I., for plaintiff; Dana H. Gaebe, Providence, R.I., of counsel.

Iris J. Brown, Washington, D.C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D.C., for defendant; Theodore D. Peyser and Robert S. Watkins, Washington, D.C., of counsel.

Before FRIEDMAN, Chief Judge, COWEN, Senior Judge, and BENNETT, Judge.

ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S CROSS–MOTION

COWEN, Senior Judge:

This tax refund case comes before the court on the parties' cross-motions for judgment on the pleadings. The parties agree that the decision hinges on the validity of Treas.Reg. § 1.162–21(b)(1)(iii), which provides, in substance, that no deduction shall be allowed for amounts paid in settlement of the taxpayer's actual or potential liability for a civil penalty.[1] In its income tax

---

1. This Regulation was issued February 14, 1975, and plaintiff informs us that it "has received no substantial consideration by the courts since its promulgation." Brief for plaintiff at 7. Neither party has cited a court decision involving the validity of the regulation and we have found none.

return for the year in suit, plaintiff deducted $43,000 which it had paid in settlement of a civil penalty assessed by the United States Bureau of Customs. The Commissioner of Internal Revenue disallowed the deduction and this suit followed. Since we have decided that the regulation is a valid exercise of the statutory authority of the Secretary of the Treasury to issue interpretive regulations, we grant the government's motion for judgment on the pleadings and dismiss the petition.

The plaintiff, Adolf Meller Company, is one of only four companies in the United States that manufacture and distribute synthetic gemstones for use in industry. As part of its business, the plaintiff imports synthetic gems from abroad. In 1967, the United States Post Office instituted a new procedure for clearing large lots of imported merchandise (including synthetic gems) through customs, and the plaintiff found that its production and delivery schedules were being disrupted by delays caused by the new system. Consequently, the plaintiff devised a delivery scheme that was intended to avoid the delays and keep its schedules current. During 1967 and 1968, the plaintiff imported some 925 small parcels of gems into the United States; these parcels each contained a small quantity of gems, and were addressed to individual employees at the plaintiff's factory. The small parcels bypassed the time-consuming procedures used to clear large lots.

On March 21, 1969, the District Director of Customs sent plaintiff a Notice of Penalty, demanding payment of $533,370.12 as a penalty assessed against plaintiff for the violation of section 592 of the Tariff Act of 1930, 46 Stat. 750, 19 U.S.C. § 1592. Section 592 of the Tariff Act provides that when in the importation of merchandise in commercial shipments, a person enters or introduces, or attempts to introduce, imported merchandise by means of any false statement in a declaration without reasonable cause to believe the truth of that statement, the merchandise or its domestic value

is forfeited to the United States. The Director charged that the taxpayer had used informal mailings of the synthetic gems to circumvent customs scrutiny and that the parcels were mislabeled in violation of the law. In addition to the forfeiture of the value of the goods ($533,370.12), the Director demanded $55,560.34 in duty on the alleged mislabeled gems.

Pursuant to 19 U.S.C. § 1618, the plaintiff petitioned for remission or mitigation of the penalty, claiming that (a) the Post Office procedures had been disrupting delivery schedules, and the informal mailing was intended only to expedite receipt of the gems; (b) the alleged mislabeling was not mislabeling at all in some cases, and was the fault of the Customs Service itself; and (c) during the time of these shipments, the plaintiff's business was expanding rapidly and two key employees were made unable to work, so that the remaining officers could not monitor all shipments as closely as might otherwise have been possible. The plaintiff also pointed to its long and hitherto spotless customs record. After negotiations and administrative proceedings which went on for some time, the plaintiff finally agreed to pay the duty the Director alleged was due, plus an additional sum of $43,000 in compromise of the original assessed penalty of $533,370.12.

Plaintiff deducted the $43,000 payment from its gross income as a business expense on its 1972 tax return. On May 18, 1976, the Commissioner of Internal Revenue disallowed the deduction under the authority of section 162(f) of the Internal Revenue Code (IRC). On September 27, 1976, plaintiff paid the tax deficiency assessed against it in the amount of $16,285, plus interest of $4,374.14. After a timely claim had been rejected by the IRS, the plaintiff brought this suit.

Section 162 of the Internal Revenue Code of 1954, as amended, provides in pertinent part:

§ 162. *Trade or business expenses*

(a) *In general*

There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * *

\* \* \* \* \* \*

(f) [added by § 902(a) of the Tax Reform Act of 1969, Pub.L. 91–172, 83 Stat. 487] *Fines and penalties.—*

No deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law.

In interpretation of this section, the Commissioner promulgated the following regulation:

§ 1.162–21 *Fines and penalties*

\* \* \* \* \* \*

(b) *Definition.* (1) For purposes of this section a fine or similar penalty includes an amount—

\* \* \* \* \* \*

(iii) Paid in settlement of the taxpayer's actual or potential liability for a fine or penalty (civil or criminal); * * *

\* \* \* \* \* \*

The plaintiff concedes that the $43,000 payment at issue here falls squarely within subsection (1)(b)(iii) of this regulation, and that the deduction is therefore barred if the regulation is valid.

Although it is not entirely clear from the pleadings and briefs, the plaintiff appears to rely on two distinct arguments in attacking the validity of the regulation. Briefly stated, the plaintiff contends that (1) Congress did not intend to include civil forfeitures of the sort imposed here within the ambit of deductions excluded under the rubric of "fines or similar penalties," and (2) even if a finally determined forfeiture might be an impermissible deduction under

this section, an amount paid in settlement of a disputed forfeiture obligation is not.

■ To analyze the first argument, we must examine the short legislative history behind section 162(f). The plaintiff relies principally on a passage from the report of the Senate Finance Committee on the Tax Reform Act of 1969, Pub.L. 91–172:

First, the committee amendments provide that no deduction is to be allowed for any fine or similar penalty paid to a government for the violation of any law. This provision is to apply in any case in which the taxpayer is required to pay a fine because he is convicted of a crime (felony or misdemeanor) in a full criminal proceeding in an appropriate court. * * [S. Rep. No. 91–552, *U.S.Code Cong. & Admin.News*, 91st Cong., 1st Sess. (1969), pp. 1645, 2311–12.]

Taken alone, this statement supports the plaintiff's argument that a civil forfeiture should be a deductible expense.

But there is more to be found in the legislative history. The very next sentence of the report states: "This represents a codification of the general court position in this respect." *Id.* at 2312. This sentence conflicts[2] with the previous statement, because it is indisputable that under previous case law the denial of deduction treatment was not limited to fines resulting from criminal convictions. The rule announced by the Supreme Court in *Tank Truck Rentals v. Commissioner*, 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed.2d 562 (1958), denied a deduction to *any* fine or penalty if the allowance of the deduction would severely frustrate a sharply defined national policy. The purpose of this rule was to prevent favorable tax treatment from "blunting the sting" of a validly imposed penalty. *Atzingen-Whitehouse Dairy, Inc., v. Commissioner*, 36 T.C. 173, 183 (1961). In *McGraw-Edison Co. v. United States*, 300 F.2d 453, 156 Ct.Cl. 590 (1962), for example, a deduction was

---

**2.** "In summary, there is fairly clear conflict between the broad language of section 162(f) and the narrow interpretation of that language presented in the Senate committee report." Taggart, *"Fines, Penalties, Bribes, and Damage Payments and Recoveries,"* 25 *Tax Law Review* 611, 649 (1970). This article contains an excellent discussion of the problems posed by section 162(f).

denied to an amount paid to the United States in compromise of a claim for damages for breach of a contract clause prohibiting the use of child labor.

Section 162(g), relating to treble damage payments under the antitrust laws, expressly limits the disallowance of a deduction to amounts paid or incurred as a result of a conviction, a plea of guilty or a plea of *nolo contendere* in a criminal proceeding, or to amounts paid in settlement of an action brought on account of the violation of a criminal law. The absence of any such limiting language in section 162(f) suggests that the application of that section is not limited to fines or penalties paid in connection with criminal proceedings.

Further evidence in support of this interpretation may be found in the report of the Senate Finance Committee concerning Pub.L. 92–178, which altered and re-enacted parts of section 162. While subsequent legislative history is ordinarily entitled to very little weight, it is of some value here, because the Committee recommended re-enactment of section 162(f) without change after considering the regulation attacked by this plaintiff. The Committee wrote:

> In connection with the proposed regulations relating to the disallowance of deductions for fines and similar penalties (sec. 162(f)), questions have been raised as to whether the provision applies only to criminal "penalties" or also to civil penalties as well. In approving the provisions dealing with fines and similar penalties in 1969, it was the intention of the committee to disallow deductions for payments of sanctions which are imposed under civil statutes but which in general terms serve the same purpose as a fine exacted under a criminal statute. The provision was intended to apply, for example, to penalties provided for under the Internal Revenue Code in the form of assessable penalties (subchapter B of chapter 68) as well as to additions to tax under the internal revenue laws (subchapter A of chapter 68) in those cases where the government has the fraud burden of proof (i. e., proof by clear and convincing

evidence). It was also intended that this rule should apply to similar type payments under the laws of a State or other jurisdiction.

> On the other hand, it was not intended that deductions be denied in the case of sanctions imposed to encourage prompt compliance with requirements of law. Thus, many jurisdictions impose "penalties" to encourage prompt compliance with filing or other requirements which are really more in the nature of late filing charges or interest charges than they are fines. It was not intended that this type of sanction be disallowed under the 1969 action. Basically, in this area, the committee did not intend to liberalize the law in the case of fines and penalties. [S. Rep. No. 92–437, 92d Cong. 1st Sess. (1971), U.S.Code Cong. & Admin.News 1971, pp. 1825, 1979, 1972–1 Cum.Bull. 559, 600.]

These statements help to resolve the apparent conflict in the earlier report of the same Committee.

Finally, the United States Tax Court has reached a similar conclusion in the recent case of *Tucker v. Commissioner,* 69 T.C. 675 (1978) in which a civil penalty imposed by the state of New York for a teacher's violation of a contractual no-strike clause was held nondeductible. The Tax Court remarked in a footnote:

> The legislative history can be read to raise the issue of whether sec. 162(f) is applicable to civil fines. [citations omitted] We need not resolve any potential conflict in the legislative history [citations omitted], since we are convinced that Congress in 1969 simply intended to codify existing law. * * * *Id.* at 679 n. 4.

We agree with the Tax Court and reject plaintiff's contention that section 162(f) should be applied only to deny a deduction for a fine or penalty paid as a result of a criminal conviction.

 The plaintiff's second argument—that a compromise settlement payment should be treated differently from a payment more formally characterized as a "fine"—is briefly answered. Pre-1969 case

**1364**

law made it clear that settlements were to be treated as though they partook of the character of the obligation which generated them. In *McGraw-Edison Co. v. United States, supra,* this court wrote:

> Sums paid in compromise of such a liability take on the character of the underlying asserted obligation and in this case are similarly nondeductible. * * * We have no way of knowing whether and to what extent plaintiff in fact violated the Act, and trial of that issue would obviously defeat the very purpose of the compromise. It is not the fact of compromise agreement that controls but that allowance of sums paid for violation blunts the sting of the penalty. * * *
> [300 F.2d at 456, 156 Ct.Cl. at 595–96.]

*Cf. Commissioner v. Longhorn Portland Cement Co.,* 148 F.2d 276, *cert. denied,* 326 U.S. 728, 66 S.Ct. 33, 90 L.Ed. 432 (1945) (decided under earlier law). We are convinced that Congress did not intend to change this logical and salutary rule when section 162(f) was enacted.

Accordingly, we hold that Treas. Reg. § 1.162–21(1)(b)(iii) is a valid interpretation of section 162(f) of the Internal Revenue Code, and that plaintiff is not entitled to the claimed deduction for the $43,000 payment at issue here. The defendant's motion for judgment on the pleadings is granted; plaintiff's cross-motion for judgment on the pleadings is denied, and the petition is dismissed.

