S & B RESTAURANT, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3107–78.    Filed March 31, 1980.

*Merle A. Wolfson* and *Lawrence J. Arem,* for the petitioner.
*Robert W. Lynch,* for the respondent.

TANNENWALD, *Judge:* Respondent determined deficiencies in petitioner's income tax as follows:

| FYE June 30— | Deficiency |
|---|---|
| 1974 | $7,464 |
| 1975 | 2,019 |

All other adjustments having been conceded by petitioner, the

sole issue for decision is whether petitioner is entitled to deduct certain payments made to the Clean Water Fund of the State of Pennsylvania.

## FINDINGS OF FACT

Petitioner had its principal place of business in Wilkes-Barre, Pa., at the time it filed its petition herein. It filed its Federal income tax returns for the taxable years in question on the accrual basis with the Internal Revenue Service Center, Philadelphia, Pa.

At all times relevant herein, petitioner was engaged in the business of owning and operating a motel and restaurant under the name of the Treadway Inn.

During the periods involved herein, a Clean Streams Law was in effect in Pennsylvania, as set forth in Pa. Stat. Ann. tit. 35, sec. 691.1 et seq. (Purdon 1977). That law, among other things,

(a) sets forth a sharply defined policy with respect to the essentiality of clean and unpolluted streams and water, and the prevention and elimination of water pollution, including a comprehensive program of watershed management and control.

(b) prescribes fines for violations (ranging from $100 to $50,000 for each offense) and/or imprisonment (ranging from 60 days to 2 years);

(c) prescribes civil penalties of up to $10,000 per day for each violation,

(d) provides that a violation shall constitute a nuisance and shall be abatable by restraining order; and

(e) establishes a Clean Water Fund to which all fines and civil penalties shall be paid and provides that the fund is to be administered by the Sanitary Water Board for use in the elimination of pollution.

The Department of Environmental Resources of the Commonwealth of Pennsylvania (hereinafter the department) was charged with responsibility for enforcing the Clean Streams Law during the taxable periods in question. That department was vested with authority to:

pursuant to the rules and regulations adopted by the board, in the case of a discharge which is authorized only if pursuant to a permit issued by the department, accept payments which would be paid into The Clean Water Fund in lieu of requiring the permittee to construct or operate a treatment facility. Such rules and regulations allowing such payments shall include the following:

(1) That the department finds that the use of the funds so received would provide greater benefit to citizens of the Commonwealth and would more appropriately conform to the declarations of policy of this act than would the construction and operation of a treatment facility.

(2) That in determining the amounts of such payments, the department shall consider the cost of construction and operation of a treatment facility, the quantity and quality of the discharge, the effect of the discharge on waters of the Commonwealth, the period of time for which the discharge will continue and other relevant factors.

(3) That the permit authorizing the discharge be subject to such conditions as the department might impose, including conditions relating to procedures for the effective cessation of any pollutional discharge upon closing of the operation.

(4) That allowing the discharge will not adversely affect any treatment program which is being conducted or is contemplated in the watershed in which the discharge is located.

(5) That any such payments accepted in lieu of requiring the permittee to construct or operate a treatment facility shall be used for abatement programs or the construction of consolidated treatment facilities which would be more effective than a larger number of smaller programs or facilities, and further, that such funds shall be used only for such projects, including gathering and collection systems, on the watershed or on the body of water into which such permittee is discharging. [Pa. Stat. Ann. tit. 35, sec. 691.8 (Purdon 1977).]

No such rules and regulations have ever been adopted.

At some time prior to June 30, 1973, the Bureau of Water Quality Management of the Department learned that petitioner was discharging raw sewage directly into an underground waterway.

Pennsylvania created an Environmental Strike Force, comprised of special assistant attorneys general to enforce the Clean Streams Law, including litigation. One Ralph Kates (hereinafter Kates) was a special assistant attorney general assigned to that task force.

On or about March 1973, as a result of negotiations in which Kates played a leading role, the department entered into the following agreement with petitioner: [1]

### AGREEMENT

THE COMMONWEALTH OF PENNSYLVANIA AND THE TREADWAY INN, INC.

WHEREAS, The Treadway Inn, Inc. is a commercial establishment operating

---

[1]As appears, the agreement is between the department and the Treadway Inn, Inc., which would seem to be a separate corporation. There is nothing in the record to explain the discrepancy except the stipulation that petitioner transacted its business under the name of "Treadway Inn." The parties, however, have treated petitioner and Treadway Inn, Inc., as one and the same, and we accord them similar treatment for the purposes of this case.

motel, eating and drinking facilities on Pennsylvania Route 315 in Plains Township, Luzerne County; and

WHEREAS, The Treadway Inn, Inc. is currently discharging approximately four hundred thousand (400,000) gallons of raw sewage per month directly to the underground; and

WHEREAS, The Treadway Inn, Inc. is in the process of constructing forty (40) additional motel units at the same site as Treadway Inn, Inc. and

WHEREAS, the sewage wastes from said additional motel units will also be discharged directly to the underground; and

WHEREAS, Plains Township is currently under order from the Department of Environmental Resources for the construction and operation of a sanitary sewer system;

AND Now, on this 21st day of February 1973, upon the mutual exchange of the covenants contained herein, and both parties intending to be legally bound by this Agreement;

It is Hereby Agreed by and between Treadway Inn, Inc. ("Treadway") by its owner and duly authorized representative, Mr. Mark Kornfold and the Commonwealth of Pennsylvania ("Commonwealth"), Department of Environmental Resources ("Department") by its attorney that;

1. Treadway shall connect to and discharge into the sanitary sewer system of Plains Township when said sanitary sewer system becomes available.

2. Treadway shall donate one thousand dollars ($1,000.) per month to the Clean Water Fund of the Commonwealth ("Clean Water Fund") beginning March 1, 1973 until such time as Paragraph #1 of this Agreement is complied with and payments to be made on the first day of each month.

3. Treadway shall donate One Thousand Two Hundred Fifty ($1,250.) Dollars per month to the Clean Water Fund from the time the construction on the aforesaid forty (40) additional motel units is completed until such time as Paragraph #1 of this Agreement is complied with.

4. Treadway shall notify Department immediately upon the completion of said additional motel units. Notice to Department shall be by certified mail, return receipt requested, addressed to "Mr. Lawrence A. Pawlush, Regional Water Quality Manager, Department of Environmental Resources, 383 Wyoming Avenue, Kingston, Pennsylvania 18704."

5. Department agrees not to prosecute Treadway for any violations of the Clean Streams Law or the Rules and Regulations enacted pursuant thereto which are contained in this Agreement; Provided that the quality and quantity of sewage discharges from Treadway do not exceed those existing at the time of this Agreement.

6. Department reserves the right to enforce this Agreement, any permits issued or to be issued to Treadway, and all laws, rules and regulations, except those specifically waived in this Agreement.

7. This Agreement may be altered, in writing, by mutual Agreement of the parties hereto, their successors or assigns.

8. This Agreement shall bind the parties hereto, their successors and assigns.

Kates negotiated and completed the agreement on the basis of his understanding that: (a) There was no practical environmen-

tal harm being caused by petitioner's discharge of sewage waste; (b) a central municipal sewage system was under construction and, as a matter of governmental policy, it was desirable that petitioner connect to that system rather than build its own treatment facility; and (c) the amount of the payments required to be made by petitioner under the agreement approximated what petitioner would have been required to pay the municipality if that central system had been in operation.

Kates believed he had authority, and in fact he had at least apparent authority, to negotiate and execute the agreement.

Petitioner paid into the Clean Water Fund $14,000 and $15,000 during its 1974 and 1975 taxable years, respectively.

After entering into the agreement, petitioner continued to discharge raw sewage directly into the underground. Neither Pennsylvania nor any municipality provided any treatment of the raw sewage discharged by petitioner, but the State would have sought to prevent petitioner from constructing its own treatment facility.

## OPINION

Before dealing with the basic question as to whether petitioner's payments to the Clean Water Fund were fines or penalties within the meaning of section 162(f),[2] there is a preliminary issue which requires disposition. Respondent's notice of deficiency disallowed the deduction of the payments on the ground that they "represent payments of fines or similar penalties for violations of the Clean Streams Law of Pennsylvania"; it made no reference to the possibility that such payments might, in any event, be nondeductible. Similarly, respondent's answer and amended answer, which we reluctantly permitted to be filed at the opening of the trial, were directed toward the "fines or similar penalties" question and cannot be said to have raised the issue of nondeductibility on other grounds. On brief, respondent for the first time[3] asserts that petitioner has failed to meet a threshold requirement, namely, that the payments were an

---

[2]All section references, unless otherwise indicated, are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years in question.

[3]There is a passing reference to the general application of sec. 162(a) in the opening statement of respondent's counsel at trial, but it is made in the context of the issue of "fines or similar penalties" and is so vague that we do not consider it sufficient to put petitioner on notice of the existence of the issue, assuming that a clear statement at such late date would have been sufficient properly to raise the issue.

"ordinary" expense as required by section 162(a), citing *United Draperies, Inc. v. Commissioner*, 340 F.2d 936 (7th Cir. 1964), affg. 41 T.C. 457 (1964), and points to petitioner's failure to show that making such payments to the Clean Water Fund is a standard practice in the restaurant and hotel industry as support for his position. We reject respondent's belated attempt to inject what is essentially a new issue into the case. E.g., *Shelby U.S. Distributors v. Commissioner*, 71 T.C. 874, 885 (1979). As a consequence, we find it unnecessary to deal with the extent to which the articulation of "ordinary" in *United Draperies* has been modified, or perhaps even sapped of its vitality, by virtue of the Supreme Court's subsequent analysis of the meaning of that word in *Commissioner v. Tellier*, 383 U.S. 687, 689 (1966),[4] and the enactment of subsections (c), (f), and (g) of section 162 in 1969. See Note, "The Judicial Public Policy Doctrine in Tax Litigation," 74 Mich. L. Rev. 131, 133–138 (1975); J. Taggart, "Fines, Penalties, Bribes, and Damage Payments and Recoveries," 25 Tax L. Rev. 611, 651–655 (1970).

We turn to the impact of section 162(f) which provides: "No deduction shall be allowed under subsection (a) [as an ordinary and necessary expense in carrying on a trade or business] for any fine or similar penalty paid to a government for the violation of any law." Petitioner argues that: (a) The payments in question were for permission to continue to discharge raw sewage and designed to further the public policy of the Clean Streams Law so that they could not constitute a fine or penalty for any violation of that law; (b) in any event, even if such characterization is erroneous, the payments do not fall within the ambit of section 162(f) because no legal proceeding was instituted against petitioner and no conviction or other disposition of any such proceeding is involved.

Respondent counters with the assertion that the payments represent nothing more than the price paid by petitioner for an agreement by the Commonwealth of Pennsylvania not to prosecute or otherwise proceed legally against petitioner for its admitted violation of the Clean Streams Law and that, in this context, the payments clearly fall within the ambit of section 162(f) as interpreted by respondent's regulations (sec. 1.162–21,

---

[4]See also *Commissioner v. Lincoln Savings & Loan Assn.*, 403 U.S. 345, 353 (1971).

Income Tax Regs.), and particularly section 1.162–21(b)(1)(iii), Income Tax Regs., which defines a fine or penalty as including an amount "Paid in settlement of the taxpayer's actual or potential liability for a fine or penalty (civil or criminal)." For the reasons hereinafter set forth, we hold for petitioner.

Clearly, the Clean Streams Law has its punitive aspects; it imposes criminal and civil penalties. But, it is also clear that the law has as one of its purposes the orderly development of pollution control through the construction and operation of "consolidated treatment facilities"—rather than "a larger number of smaller programs or facilities." See Pa. Stat. Ann. tit. 35, sec. 691.8(b)(5) (Purdon 1977). Thus, the Clean Streams Law has a dual purpose and our task is to determine which purpose the payments in question were designed to serve. *Middle Atlantic Distributors v. Commissioner*, 72 T.C. 1136, 1145 (1979); *Grossman & Sons, Inc. v. Commissioner*, 48 T.C. 15, 31 (1967).

Based upon the record herein, we are satisfied that the payments in question were in furtherance of the purpose of the Clean Streams Law to control pollution through consolidated, rather than individual, facilities, and that they were made by petitioner in consideration of being allowed to continue to discharge its sewage waste, rather than as a fine or similar penalty imposed by the law or "settlement of the taxpayer's [petitioner's] actual or potential liability for a fine or penalty." See sec. 1.162–21(b)(1)(iii), Income Tax Regs. We rest this conclusion on several grounds. First, the petitioner was obligated to connect into the municipal sewer system when it became available and the payments were to continue only until such time.[5] The indefiniteness of the total amount of the payments makes them distinguishable in some degree from a fine or penalty which is usually in a fixed amount. Second, the amount of the payment was fixed upon the basis of what the representative of the Commonwealth of Pennsylvania (Kates) believed would have been the charges petitioner would have had to pay if the municipal facility had been available. Third, the State would have attempted to block any attempt by petitioner to construct its own sewage treatment facilities. Fourth, Kates was given to

---

[5]Thus, if the municipal facility had become available prior to the end of March 1973, petitioner presumably would have forthwith implemented its obligation to connect thereto and, consequently, would have had to make only one monthly payment of $1,000.

understand that no practical environmental harm would be caused by petitioner's continued discharge of sewage waste.

We recognize, of course, that the March 1973 agreement provided that the department would not prosecute petitioner for any violations of the Clean Streams Law, but we view this as merely incidental to the main purpose of the agreement, which was to ensure that petitioner would join the municipal disposal system and not go off on a frolic of its own. Moreover, we note that the agreement not to prosecute was conditioned upon the continuation of the quality and quantity of the sewage discharges not exceeding those contemplated by the agreement. See par. 5 of the agreement, p. 1229 *supra*. In the foregoing context, respondent's reliance on *Tank Truck Rentals v. Commissioner*, 356 U.S. 30 (1958), is misplaced. In *Tank Truck*, there were actual convictions for violating the excess truck weight limitations of Pennsylvania law, and it was on this basis that the toll charge argument as against a fine or penalty was rejected. (See 356 U.S. at 34.) By way of contrast, in the instant case, petitioner's payments were in furtherance of the policy of the Clean Streams Law with respect to discouraging separate treatment facilities and the development of a comprehensive program of regional control and management of the treatment of sewage disposal. Allowing the deduction under such circumstances cannot be viewed as encouraging violations or reducing the effectiveness of Pennsylvania pollution control laws. See *Tank Truck Rentals v. Commissioner, supra* at 36.

The agreement was based upon Kates' understanding that the impact of petitioner's then-existing discharges (as well as those expected to result from the additional motel units) would not be harmful to the environment. There is no inkling in the record that the underlying facts *with regard to the situation of the petitioner herein* belied Kates' understanding, nor was any such evidence in this regard offered or suggested.[6] Under these circumstances, we think it immaterial whether Kates' understanding was or was not technically supported in fact. The point is that his understanding of the underlying basis for the agreement gave direction to its objective and thereby to the purpose of the payment.

---

[6]The evidentiary disputes at the trial related solely to the scope and interpretation of the Clean Streams Law.

Nor are we impressed with respondent's argument that section 691.8 (Pa. Ann. Stat. tit. 35 (Purdon 1977)) could not be the basis for agreement because no rules and regulations had or have been issued thereunder and no formal permit was issued by the department. We think it sufficient that Kates, who was concededly authorized to represent the department, believed he had authority under that section and acted accordingly in negotiating the agreement with the petitioner. In our opinion, he at least had apparent authority to execute the agreement on behalf of the department. Under these circumstances, we think that agreement was sufficient in substance to constitute a "permit" to petitioner to continue to discharge its sewage until the facility was constructed and in operation.

Our analysis makes it unnecessary to deal with an alternative contention by petitioner that, in any event, the institution of a legal proceeding (which did not occur herein) is a necessary precondition to the application of section 162(f) and that respondent's regulation (sec. 1.162–21(b)(1)(iii), Income Tax Regs.) is invalid.[7] We note that there is no specific requirement of a legal proceeding in section 162(f), although there is some indication in the legislative history that Congress may have had such a requirement in mind. See S. Rept. 91–552, 274 (1969), 1969–3 C.B. 423, 597; H. Rept. (Conf.) 91–782, 331–332 (1969), 1969–3 C.B. 644, 676–677 (in connection with section 902 of the Tax Reform Act of 1969, 83 Stat. 710); S. Rept. 92–437, 72–74 (1971), 1972–1 C.B. 559, 599–600 (in connection with section 310 of the Revenue Act of 1971, 85 Stat. 525).[8] We also note that requiring the institution of a legal proceeding in every case may present a serious problem by way of encouraging taxpayers to apply the principle of "pay early and get the deduction."

On the basis of the circumstances revealed by the record herein, we hold that petitioner's payments into the Pennsylvania Clean Water Fund in 1974 and 1975 are deductible under section 162(a).

*Decision will be entered under Rule 155.*

---

[7]See *Adolf Meller Co. v. United States*, 220 Ct. Cl.—, 600 F.2d 1360, 1364 (1979) (regulation held valid).

[8]The issue of the necessity of a legal proceeding was apparently not raised in *Tucker v. Commissioner*, 69 T.C. 675 (1978), in view of the automatic application of the particular statutory provision involved therein.