**COLT INDUSTRIES, INC.,**
**Plaintiff/Cross–Appellant,**

v.

**The UNITED STATES,**
**Defendant–Appellee.**

No. 89–1165.

United States Court of Appeals, Federal Circuit.

July 24, 1989.

Frank M. Northam, Webster, Chamberlain & Bean, Washington, D.C., argued for plaintiff-cross-appellant. With him on the brief were George D. Webster and Hugh K. Webster.

Teresa E. McLaughlin, Dept. of Justice, Washington, D.C., argued for defendant-appellee. With her on the brief were James I.K. Knapp, Acting Asst. Atty., Gary R. Allen and Jonathan S. Cohen.

Before NIES, MAYER and MICHEL, Circuit Judges.

## OPINION

MAYER, Circuit Judge.

■ On cross-motions for partial summary judgment, the United States Claims Court, 11 Cl.Ct. 140 (1986), granted the government's motion and held that civil penalties assessed under the Clean Water Act, 33 U.S.C. § 1319(d), and the Clean Air Act, 42 U.S.C. § 7413(b), against Colt's affiliated subsidiary, Crucible, Inc., constitute a "fine or similar penalty paid to a government for the violation of any law" for which a deduction as an ordinary business expense is barred by section 162(f) of the Internal Revenue Code. We affirm.

### Background

The protracted events leading to suit are fully set out in the trial court's memorandum of decision. There is no dispute over material facts or that summary disposition of Count I of the complaint, at issue here,

was appropriate.[*] Consequently, we recount only those facts that are necessary to our discussion.

Crucible's manufacture of basic and fabricated steel products in Midland, Pennsylvania, is subject to several environmental protection laws and regulations, including the federal Clean Air Act, 42 U.S.C. § 7401, *et seq.*, the federal Clean Water Act, 33 U.S.C. § 1251, *et seq.*, the Pennsylvania State Implementation Plan, and the rules and regulations of the Pennsylvania Department of Environmental Resources. Beginning in 1974, the Environmental Protection Agency (EPA) conducted inspections at Crucible's Midland works. Violations of Pennsylvania's implementation plan and environmental resources regulations were discovered and, in July and September 1976, EPA issued notices of violation to Crucible pursuant to section 7413(a)(1) of the Clean Air Act. In March 1977, EPA conducted another inspection and found that the violations alleged in the 1976 notices were continuing.

Because it failed to eliminate violations by statutorily mandated dates, a compliance plan proposed by Crucible was rejected by EPA on April 3, 1978. Shortly thereafter, EPA requested the Department of Justice to institute a civil action against Crucible seeking an injunction and, under section 7413(b) of the Clean Air Act, civil penalties in the amount of $25,000 per day of violation. In addition, EPA alleged that Crucible discharged pollutants into the Ohio River in excess of amounts authorized in a 1974 permit issued to it under section 1342 of the Clean Water Act. EPA therefore recommended that under section 1319(d) of that act, civil penalties in the amount of $10,000 per day also be sought.

Negotiations between Crucible and EPA continued, and on May 7, 1979, a consent decree was filed in the United States District Court for the Western District of Pennsylvania. On June 25, 1979, the district court signed the decree, and entered judgment on the complaint that Justice had

---

[*] Pursuant to the stipulation of the parties, Count II of the complaint was dismissed after the trial court ruled on the cross motions. Final judgment in the case was then entered on October 21, 1988, from which this appeal was taken.

filed in accord with EPA's recommendations.

In satisfaction of the civil penalties imposed by the consent decree, Crucible remitted checks totaling $1.6 million to the Pennsylvania Clean Air and Clean Water Funds. The instant suit was precipitated when, on its consolidated United States Corporation Income Tax Return for 1979, Colt claimed an ordinary business expense deduction for the $1.6 million payment under section 162(a) of the Internal Revenue Code. After audit of Colt's return, the Internal Revenue Service disallowed the deduction on the basis that the payments constituted fines or similar penalties under I.R.C. § 162(f). Colt paid the deficiency assessed by the IRS, together with interest, and, when the IRS denied its claim for refund, filed the refund suit that gives rise to this appeal.

### Discussion

I.R.C. § 162(a) provides a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business...." However, codifying caselaw that prohibited a deduction where the effect would be to "reduc[e] the 'sting'" of a penalty imposed by law, *Tank Truck Rentals, Inc. v. Commissioner*, 356 U.S. 30, 36, 78 S.Ct. 507, 510, 2 L.Ed.2d 562 (1958), subsection (f) of section 162 precludes the deduction of "any fine or similar penalty paid to a government for the violation of any law."

The applicability of section 162(f) here is dictated by its plain language. If there were any doubt about the meaning of the phrase "fine or similar penalty", it is readily removed by reference to Treasury regulations promulgated in interpretation of the provision. As defined in the regulations, "a fine or similar penalty includes an amount ... [p]aid as a civil penalty imposed by Federal, State, or local law, ... [or p]aid in settlement of the taxpayer's actual or potential liability for a fine or penalty (civil or criminal)." 26 C.F.R.

§ 1.162–21(b)(1)(ii), (iii) (1988). Colt concedes that the payments at issue are "civil penalties"; indeed, the payments are so denominated in the consent decree. And on the checks it remitted in satisfaction of the penalty, Colt inscribed the notation "E.P.A. Penalty." By its own admission, "the amount paid by Colt was part of the negotiated settlement of threatened litigation under the federal Clean Air Act and Clean Water Act."

■ Colt nevertheless argues that disallowance was erroneous because section 162(f) "only bars deduction of those civil penalties that serve a punitive or criminal purpose," and the penalties it paid did not. Colt relies on a report of the Senate Finance Committee which says, "In approving the provisions dealing with fines and similar penalties in 1969, it was the intention of the committee to disallow deductions for payments of sanctions which are imposed under civil statutes but which in general terms serve the same purpose as a fine exacted under a criminal statute." S.Rep. No. 437, 92nd Cong., 1st Sess. 73–74 (1971), *reprinted in* 1971 U.S.Code Cong. & Ad. News 1825, 1918, 1979–1980.** Colt's reliance is misplaced.

The committee's comments were to clarify that civil penalties, as well as criminal, are within the ambit of section 162(f), not an effort to distinguish between deductible and nondeductible civil penalties. The committee emphasized that it "did not intend to liberalize the law in the case of fines or penalties." *Id.* To the extent that it recognized an exception to the nondeductibility of civil penalties, the committee said only that the deduction of "late filing charges or interest charges" imposed "to encourage prompt compliance with filing or other requirements" is not barred. *Id.* But the fines against Colt are not of this type. *See Tull v. United States*, 481 U.S. 412, 422, 107 S.Ct. 1831, 1838, 95 L.Ed.2d 365 (1987) (33 U.S.C. § 1319(d) prescribes "[r]emedies intended to punish culpable individuals[;]" "Subsection 1319(d)[ ] author-

---

** Subsequent legislative history is worthy of little weight. Because section 162(f) was reenacted without change, however, this report has been considered "of some value." *Adolf Meller Co. v. United States*, 220 Ct.Cl. 500, 600 F.2d 1360, 1363 (1979).

iz[es] punishment to further retribution and deterrence ...''). The committee's statement in context undercuts rather than supports Colt's position.

The argument is also unacceptable because, as a necessary predicate according to Colt, the court would have to "determine the purpose or purposes served by the specific civil penalty payment at issue in order to ascertain whether the payment is barred from deduction." But that is not our office; "Congress has delegated to the Commissioner, not to the courts, the task of prescribing 'all needful rules and regulations for the enforcement' of the Internal Revenue Code. 26 U.S.C. § 7805(a). In this area of limitless factual variations, 'it is the province of Congress and the Commissioner, not the courts, to make the appropriate adjustments.' *Commissioner v. Stidger*, 386 U.S. 287, 296 [, 87 S.Ct. 1065, 1071, 18 L.Ed.2d 53]." *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 449, 19 L.Ed.2d 537 (1967).

As is apparent, neither the statute nor the regulations prescribe a "purpose" inquiry. It is therefore beyond our mandate to embark on one to make our own assessment of the deductibility of a particular penalty. "The role of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." *Id.* "Treas.Reg. § 1.162–21(1)(b)(iii) is a valid interpretation of section 162(f) of the Internal Revenue Code," *Adolf Meller Co. v. United States*, 220 Ct.Cl. 500, 600 F.2d 1360, 1364 (1979), and Colt does not suggest otherwise.

Colt also contends that the penalties it paid were compensatory, and therefore not within the scope of section 162(f). Treasury Regulation § 1.162–21(b)(2) provides: "Compensatory damages (including damages under section 4A of the Clayton Act (15 U.S.C. § 15a as amended)) paid to a government do not constitute a fine or penalty." Colt would like to apply this provision here because in its view the $1.6 million ultimately negotiated was "based on the economic benefit which [Crucible] had

derived from alleged noncompliance with pollution control laws," and was intended "essentially [to return Crucible] to the financial position in which it would have been had it complied with those laws." Colt does not explain how penalties designed to return Crucible to the status quo ante compensate the government. That is the relevant inquiry, and Colt's own argument confirms that that was not the purpose of the penalty it paid. In any event, EPA is not authorized under either the Clean Air or Clean Water acts to seek compensatory damages; it is limited to injunctive relief and the maximum monetary penalties prescribed by 42 U.S.C. § 7413(b), and 33 U.S.C. § 1319, respectively. *Compare* 15 U.S.C. § 15a ("the United States ... shall recover actual damages by it sustained and the cost of suit").

### Conclusion

Accordingly, the judgment of the Claims Court is affirmed.

AFFIRMED.