# United States Tax Court

T.C. Memo. 2022-75

CLEMENT ZIROLI AND DAWN M. ZIROLI,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 1041-20.                    Filed July 14, 2022.

————

Clement Ziroli and Dawn M. Ziroli, pro se.

*Wesley J. Wong*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, *Judge*:  By notice of deficiency dated January 9, 2020, respondent determined deficiencies in petitioners' Federal income tax and accuracy-related penalties under section 6662(a)[1] as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|------------|----------------------|
| 2015 | $20,875 | $4,175.00 |
| 2016 | 231,449 | 46,289.80 |

————

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*2]** On February 2, 2021, the parties filed a Stipulation of Settled Issues in which they conceded or otherwise resolved all of the noncomputational adjustments in this case, except for the adjustment concerning "Other Gains or Losses from Form 4797 – Disgorgement" for taxable year 2016.[2] The issue for decision is whether, for the 2016 taxable year, petitioners are entitled to a deduction under section 162(a) for the disgorgement Mr. Ziroli paid to the U.S. Securities and Exchange Commission (SEC) in settlement of his potential civil liability for alleged federal securities violations. Resolution of this issue turns on whether the disgorgement payment in question constitutes a "fine or similar penalty" within the meaning of section 162(f).

## FINDINGS OF FACT

Some of the facts are stipulated and are so found. The Stipulation of Facts and the exhibits attached thereto, and the Stipulation of Settled Issues are incorporated herein by this reference. At the time petitioners filed their Petition, they resided in Las Vegas, Nevada.

During all relevant periods, petitioner Clement Ziroli was the president and a one-percent shareholder of First Mortgage Corp. (FMC). FMC was a privately held California corporation based in Ontario, California. FMC was, among other things, a mortgage lender that originated and acquired residential mortgages. FMC pooled the mortgages that it originated and acquired into residential mortgage backed securities, which were guaranteed by the Government National Mortgage Association and sold to investors.[3]

Sometime in or around February 2015, FMC was informed that it was being investigated by the SEC for alleged federal securities violations. The investigation was subsequently expanded to include six of FMC's senior executives, including Mr. Ziroli. After settlement discussions, Mr. Ziroli reached a settlement with the SEC.

---

[2] The Stipulation of Settled Issues also stated, inter alia, that (1) petitioners are liable for the accuracy-related penalty under section 6662 for taxable year 2015, and (2) petitioners are not liable for the accuracy-related penalty under section 6662 for taxable year 2016.

[3] The Government National Mortgage Association is a U.S. government corporation within the U.S. Department of Housing and Urban Development.

**[\*3]** On March 15, 2016, Mr. Ziroli entered into a Consent of Defendant Clement Ziroli, Jr. (consent), which set forth the terms of the settlement. Paragraphs 2 and 3 of the consent stated as follows:

2) Without admitting or denying the allegations of the complaint (except as provided herein in paragraph 11, and except as to personal subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the final judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

   a) permanently restrains and enjoins Defendant from violation of Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5(a) and (c) promulgated thereunder [17 C.F.R. § 40.10b-5(a) and (c)];

   b) orders Defendant to pay disgorgement in the amount of $411,421.98, plus prejudgment interest thereon in the amount of $27,203.92; and

   c) orders Defendant to pay a civil penalty in the amount of $200,000 under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

   d) prohibits Defendant, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], for five (5) years from the date of entry of the Final Judgment, from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

3) . . . Defendant further agrees that he shall not claim, assert, or apply for a tax deduction or tax credit with regard to any federal, state, or local tax for any penalty amounts that Defendant pays pursuant to the Final

**[*4]** Judgment, regardless of whether such penalty amounts or any part thereof are added to the distribution fund or otherwise used for the benefit of investors.[4]

On May 31, 2016, the SEC filed a complaint against FMC and six of FMC's senior executives, including Mr. Ziroli, in the U.S. District Court for the Central District of California (District Court). In the complaint, the SEC alleged:

> FMC and the individual defendants misled investors in residential mortgage-backed securities guaranteed by the Government National Mortgage Association (GNMA RMBS) . . . by falsely claiming to both GNMA and investors that certain mortgage loans in these securities were delinquent when, in fact, such loans were current. FMC then bought these current loans out of GNMA RMBS loan pools at lower prices applicable to delinquent loans. Because, in reality, these loans were current, FMC could then resell the loans into new GNMA RMBS loan pools at higher prices applicable to current loans for an immediate, nearly risk-free profit. The investors, however, were deprived of the benefit of their investment in these securities – the interest payments on the loans.

On May 31, 2016, the SEC also issued Litigation Release No. 23553, announcing that it had reached a settlement with FMC, Mr. Ziroli, and the other defendants.

On June 3, 2016, the SEC filed a notice of motion and plaintiff's unopposed motion for entry of judgment (motion for entry of judgment) in the District Court. Attached to the motion for entry of judgment, as exhibit 6, was a copy of the consent signed by Mr. Ziroli on March 15, 2016, and a proposed final judgment as to defendant Clement Ziroli, Jr.

---

[4] Paragraph 11 of the Consent further stated:

Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings," and "a refusal to admit the allegations is equivalent to a denial, unless the defendant or respondent states that he neither admits nor denies the allegations."

**[\*5]**    On July 20, 2016, the District Court entered a final judgment as to defendant Clement Ziroli, Jr. (final judgment).  As it pertains to Mr. Ziroli, the final judgment ordered, inter alia:

> Defendant is liable for disgorgement of $411,421.98, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $27,203.92, and a civil penalty in the amount of $200,000 pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(2)]. Defendant shall satisfy this obligation by paying $638,625.90 to the Securities and Exchange Commission within 14 days after the entry of this Final Judgment.

The final judgment further ordered that "[t]he Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury."  Mr. Ziroli paid the disgorgement, prejudgment interest, and civil penalty to the SEC pursuant to the final judgment in the 2016 taxable year.

Petitioners timely filed a Form 1040, U.S. Individual Income Tax Return, for the 2016 taxable year, claiming a deduction of $411,422 for "Other gains or (losses)."  They attached to their 2016 tax return a Form 4797, Sales of Business Property, reporting that the claimed loss deduction was for the disgorgement portion of the amount Mr. Ziroli paid to the SEC in 2016.

On January 9, 2020, respondent issued to petitioners the notice of deficiency for the 2015 and 2016 taxable years.  Respondent determined, inter alia, that petitioners were not entitled to a deduction for the disgorgement Mr. Ziroli paid to the SEC during the 2016 taxable year because petitioners "did not establish that the business expense shown on your tax return was paid or incurred during the taxable year and that the expense was ordinary and necessary to your business."

On January 17, 2020, petitioners timely filed a Petition for redetermination of the deficiencies with this Court.  This case was remotely tried before the Court on February 22, 2021.  By Order dated March 10, 2021, the Court directed the parties to file simultaneous opening briefs and simultaneous answering briefs.  On April 23, 2021, respondent filed a Simultaneous Opening Brief, and on June 22, 2021, respondent filed a Simultaneous Answering Brief.

[*6]                              OPINION

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners do not contend, and the evidence does not establish, that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact. Therefore, petitioners bear the burden of proof as to all factual issues.

Section 162(a) provides the general rule that taxpayers are allowed a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. As an exception to this general rule, however, section 162(f) provides that "[n]o deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law."[5] Treasury Regulation § 1.162-21(b)[6] defines the phrase "fine or similar penalty," in relevant part, as follows:

> (1) For purposes of this section a fine or similar penalty includes an amount—
>
> . . . .
>
>> (ii) Paid as a civil penalty imposed by Federal, State, or local law . . .; [or]

---

[5] Section 162(f) was subsequently amended by the Tax Cuts and Jobs Act of 2017 (TCJA), Pub. L. No. 115-97, § 13306(a), 131 Stat. 2054, 2126. That amendment applies to amounts paid or incurred after the date of the enactment of the TCJA (unless paid pursuant to a binding order or agreement entered into before such date) and thus is not applicable to this case. *See id.* § 13306(a)(2), 131 Stat. at 2127.

[6] We note that the Commissioner has recently promulgated and adopted new rules addressing the deductibility of disgorgement under section 162. *See* Treas. Reg. § 1.162-21(e)(4)(B) (as amended by T.D. 9946, 86 Fed. Reg. 4970, 4984 (Jan. 19, 2021)). Those rules apply to taxable years beginning on or after January 19, 2021 (unless paid or incurred under any order or agreement pursuant to a suit, agreement, or otherwise, which became binding under applicable law before such date), and thus are not applicable to this case. *See id.* para. (g) (as amended by T.D. 9946, 86 Fed. Reg. at 4989).

**[*7]**            (iii) Paid in settlement of the taxpayer's actual or potential liability for a fine or penalty (civil or criminal);

Treasury Regulation § 1.162-21(b)(2), on the other hand, provides that "[c]ompensatory damages . . . paid to a government do not constitute a fine or penalty."

The parties disagree whether the disgorgement Mr. Ziroli paid to the SEC in settlement of his potential civil liability for the alleged federal securities violations constitutes a "fine or similar penalty" within the meaning of section 162(f).[7]   Respondent argues that the disgorgement constitutes a "fine or similar penalty" under Treasury Regulation § 1.162-21(b)(1)(ii) or (iii).   Petitioners argue that the disgorgement was compensatory under Treasury Regulation § 1.162-21(b)(2) and does not fall within the ambit of section 162(f).

Whether section 162(f) disallows deduction of the disgorgement in the instant case depends on "the purpose which the statutory penalty is to serve." *S. Pac. Trans. Co. v. Commissioner*, 75 T.C. 497, 653 (1980). We have held that civil penalties "imposed for purposes of enforcing the law and as punishment for the violation thereof" are "similar" penalties under section 162(f). *Id.* at 652; *see Huff v. Commissioner*, 80 T.C. 804, 824 (1983). On the other hand, we have held that some civil payments, although labeled "penalties," remain deductible if "imposed to encourage prompt compliance with a requirement of the law, or as a remedial measure to compensate another party." *Huff*, 80 T.C. at 824; *S. Pac. Trans. Co.*, 75 T.C. at 652; *see also Middle Atl. Distribs., Inc. v. Commissioner*, 72 T.C. 1136, 1143 (1979). "Where a payment ultimately serves each of these purposes, i.e., law enforcement (nondeductible) and compensation (deductible), our task is to determine which purpose the payment was designed to serve." *Waldman v. Commissioner*, 88 T.C. 1384, 1387 (1987) (citing *S & B Restaurant, Inc. v. Commissioner*, 73 T.C. 1226, 1232 (1980)), *aff'd*, 850 F.2d 611 (9th Cir. 1988).

In civil enforcement actions, the SEC is authorized to "seek, and any Federal court may grant, any equitable relief that may be

_____

[7] The parties focus primarily on whether the disgorgement is deductible under section 162. However, we note that should the disgorgement constitute a "fine or similar penalty" within the meaning of section 162(f), any loss deduction under section 165 would also be prohibited. *See Nacchio v. United States*, 824 F.3d 1370, 1374–75 (Fed. Cir. 2016); *Stephens v. Commissioner*, 905 F.2d 667, 671 (2d Cir. 1990), *rev'g* 93 T.C. 108 (1989); *Medeiros v. Commissioner*, 77 T.C. 1255, 1261 n.7 (1981).

**[\*8]** appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5). Courts have long recognized disgorgement of profits from wrongful conduct as an equitable remedy available to the SEC under 15 U.S.C. § 78u(d)(5).[8] *Liu v. SEC*, 140 S. Ct. 1936, 1940–41 (2020) (citing *SEC v. Tex. Gulf Sulphur Co.*, 446 F.2d 1301 (2d Cir. 1971), *aff'g in part, rev'g in part* 312 F. Supp. 77 (S.D.N.Y. 1970)). Title 15 U.S.C. § 78u(d)(5) restricts such equitable relief to that which "may be appropriate or necessary for the benefit of investors," indicating that it may, in some cases, be designed to serve a compensatory purpose. *Liu*, 140 S. Ct. at 1947. However, as a matter of practice, the SEC does not always distribute the entirety of disgorged funds to harmed investors, instead depositing funds in the Treasury. *Id.* at 1947–48; *see also* SEC, Division of Enforcement, 2020 Ann. Rep. 17–18 (reporting $3.589 billion in disgorgement ordered and $602 million returned to harmed investors in 2020).[9] It is thus clear, and respondent acknowledges, that disgorgement can serve both a compensatory and a punitive purpose, operating both as potential compensation to victims and as a financial sanction meant to deter securities fraud. *See Tex. Gulf Sulphur Co.*, 312 F. Supp. at 92 (describing disgorgement remedy as having purpose to "protect the investing public by providing an effective deterrent to future violations"); *see also SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1192–93 (9th Cir. 1998) (characterizing the "primary purpose" of disgorgement as "depriving the wrongdoer of ill-gotten gains," with the court then having discretion to direct funds to harmed investors as compensation).

Deductions are a matter of legislative grace, and petitioners bear the burden of proving entitlement to any deduction claimed and must show that they come squarely within the terms of the law conferring the benefit sought. *See* Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934); *Welch v. Helvering*, 290 U.S. at 115. Applying this principle, petitioners bear the burden of proving that the disgorgement Mr. Ziroli paid to the SEC was not a "fine or similar penalty" within the meaning of section 162(f). Specifically, since disgorgement can serve both a compensatory and a punitive purpose, petitioners must show that the

---

[8] Congress has recently amended the Securities Exchange Act of 1934 to provide an additional, express grant of authority to the SEC to seek disgorgement. *See* National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 6501, 134 Stat. 3388, 4625–26 (codified at 15 U.S.C. § 78u(d)(3)).

[9] Available at https://www.sec.gov/files/enforcement-annual-report-2020.pdf.

**[\*9]** disgorgement at issue was primarily designed to serve a compensatory purpose and not a law enforcement purpose.

Petitioners argue that the disgorgement Mr. Ziroli paid to the SEC "was always intended to be compensatory in nature." Petitioners assert that the disgorgement was based on the income Mr. Ziroli received from the alleged conduct and was "intended to take away the ill-gotten gains and restore the status quo." Petitioners further assert that Mr. Ziroli "did not admit or deny any wrongdoing" before reaching a settlement with the SEC.

In contrast, respondent argues that the primary purpose of SEC disgorgement is punitive and cites the Supreme Court's decision in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), as support. In *Kokesh*, the Supreme Court held that disgorgement in the securities-enforcement context is a "penalty" within the meaning of 28 U.S.C. § 2462, the applicable statute of limitations, because it (1) is imposed as a consequence for violating public laws and seeks to remedy harm to the public at large, (2) is imposed for "punitive purposes" and serves as a deterrent by depriving violators of their ill-gotten gains, and (3) in many cases, is not compensatory because the funds are paid to the court, not the victims. *Id.* at 1643–44. Although *Kokesh* is a nontax case and not controlling authority in the present case, respondent argues that the Supreme Court's analysis and holding should be widely applied and extended to the section 162(f) context.[10]

For the reasons below, we find that petitioners have failed to satisfy their burden of proving their entitlement to the deduction claimed. Specifically, petitioners have failed to show that the disgorgement was imposed as a remedial measure to compensate another party. As a result, we find it unnecessary to address whether we would adopt and apply the Supreme Court's analysis in *Kokesh*, regarding the characterization of SEC disgorgement in a nontax context, for purposes of section 162(f).

The final judgment stated that the disgorgement Mr. Ziroli paid "represent[ed] profits gained as a result of the conduct alleged in the Complaint". However, neither the final judgment nor the consent, which set forth the terms of the settlement, characterized the

---

[10] Respondent persuasively asserts that the Supreme Court's subsequent decision in *Liu,* 140 S. Ct. 1936, does not diminish the analysis or persuasive weight of *Kokesh*.

**[\*10]** disgorgement as either compensation to the government or harmed investors or as a penalty. This ambiguity may be resolved by determining the parties' intent; however, the taxpayer bears the burden to demonstrate that the payment was intended to be compensatory. *See Talley Indus. Inc. v. Commissioner*, 116 F.3d 382, 387 (9th Cir. 1997) (citing *Norgaard v. Commissioner*, 939 F.2d 874, 877 (9th Cir. 1991), *aff'g in part, rev'g in part* T.C. Memo. 1989-390), *rev'g and remanding* T.C. Memo. 1994-608.

Petitioners, however, have failed to produce any credible evidence that the parties intended for the disgorgement to be compensatory to resolve that ambiguity. Other than Mr. Ziroli's testimony, the only evidence petitioners proffered with respect to the parties' intent was a letter dated February 26, 2016, that petitioners' counsel sent to the SEC in furtherance of ongoing settlement negotiations. However, while that letter discussed the computation of the disgorgement amount in detail, it made no reference to the character or purpose of the disgorgement. Moreover, Mr. Ziroli testified at trial that "investors may or may not have been harmed by what the SEC alleges," contradicting his position that the disgorgement "was always intended to be compensatory in nature."

Petitioners argue that there should be no substantive distinction as to whether the final judgment ordered the SEC to send the disgorged funds to the U.S. Treasury or to the harmed investors, because the SEC alleged in the complaint that the government itself was a victim of the alleged conduct. However, the SEC alleged that the government was misled by the alleged conduct, but ultimately asserted that it was the investors that "were deprived of the benefit of their investment in these securities – the interest payments on the loans." Assuming arguendo that the government was a victim, petitioners have failed to show that any proprietary interest of the government was harmed by the alleged conduct.[11] Absent such a showing, we presume that the disgorgement

---

[11] *See Colt Indus., Inc. v. United States*, 11 Cl. Ct. 140, 145 (1986) (interpreting Treasury Regulation § 1.162-21(b)(2) as distinguishing between penalties imposed by the government to protect "the general welfare" and penalties imposed "to compensate for injuries to [the government's] proprietary interests in business or property"), *aff'd*, 880 F.2d 1311 (Fed. Cir. 1989); *cf. Mason & Dixon Lines, Inc. v. United States*, 708 F.2d 1043, 1047–48 (6th Cir. 1983) (finding that a penalty for driving truck with excess weight on state highways was compensatory where calculated proportionally to the excess weight and allocated to repair of state highways).

**[\*11]** was imposed by the government to protect the general welfare, not to compensate itself for any losses.

Petitioners further argue that they assumed the disgorged funds were rightfully deposited and distributed to any harmed investors pursuant to SEC policy. However, petitioners have provided no evidence to suggest that the SEC actually distributed the disgorged funds to harmed investors or to a segregated fund established to benefit victims. Even if the SEC subsequently distributed the disgorged funds to harmed investors, courts have held that any post hoc exercise of discretion by the government to use the disgorged funds to compensate victims does not transform the payment from a penalty into compensatory damages. *See Nacchio*, 824 F.3d at 1381; *Bailey v. Commissioner*, 756 F.2d 44, 47 (6th Cir. 1985). Consequently, petitioners have failed to show how the disgorgement compensates either the government (which was not harmed in its propriety capacity) or harmed investors (who apparently did not receive any of the disgorged funds). *See Colt Indus., Inc.*, 880 F.2d at 1314 ("Colt does not explain how penalties designed to return [the violating party] to the status quo ante compensate the government."); *cf. Stephens,* 905 F.2d at 673 (finding restitution to be compensatory where sentencing judge characterized it as intended to "get [the victim] its money back").

Finally, petitioners argue that, if the disgorgement is considered a penalty in this case, then it would deprive Mr. Ziroli of his Eighth Amendment protection against the imposition of excessive fines because he was also ordered to pay a $200,000 civil penalty for the same alleged conduct. Petitioners are mistaken. Courts have routinely held that the denial of a deduction is not a punishment and thus does not violate the Eighth Amendment. *N. Cal. Small Bus. Assistants, Inc. v. Commissioner*, 153 T.C. 65, 71–72 (2019); *see, e.g.*, *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1202 (10th Cir. 2018) (holding that denial of deductions under section 280E is not a penalty for purposes of the Eighth Amendment); *Murillo v. Commissioner*, T.C. Memo. 1998-13 (holding that denial of a loss deduction for forfeited money does not violate the Eighth Amendment), *aff'd*, 166 F.3d 1201 (2d Cir. 1998); *Bermingham v. Commissioner*, T.C. Memo. 1994-69 (holding that limitation of an individual retirement account deduction does not violate the Eighth Amendment); *King v. United States*, 949 F. Supp. 787, 791 (E.D. Wash. 1996) ("[T]he denial of any deduction for the forfeited proceeds from illegal drug trafficking cannot be an excessive fine under the Eighth Amendment."), *aff'd*, 152 F.3d 1200 (9th Cir. 1998).

**[\*12]** On the basis of the foregoing, we conclude that petitioners have failed to satisfy their burden of demonstrating that the disgorgement was intended to be compensatory and was not a "fine or similar penalty" within the meaning of section 162(f). Consequently, petitioners have failed to prove their entitlement to the claimed deduction and are not entitled to deduct the disgorgement on their 2016 tax return.

We have considered all arguments made by the parties and, to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*