TALLEY INDUSTRIES, INC. AND CONSOLIDATED SUBSIDIARIES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Talley Indus. v. Commissioner
Docket No. 27826-92
United States Tax Court
T.C. Memo 1994-608; 1994 Tax Ct. Memo LEXIS 617; 68 T.C.M. (CCH) 1412; December 13, 1994, Filed *617 For petitioners: James G. Phillipp, Scott M. Knutson, Timothy J. Hatch, Carl T. Crow, and Debra A. White. For respondent: Joyce L. Sugawara, Robin F. Kaufer, and Charles O. Cobb. FAY, PANUTHOS
FAY
MEMORANDUM OPINION FAY, Judge: This case was assigned to Chief Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Chief Special Trial Judge, which is set forth below. OPINION OF THE CHIEF SPECIAL TRIAL JUDGE PANUTHOS, Chief Special Trial Judge: Respondent determined a deficiency in the amount of $ 853,042 in petitioner's Federal income tax for 1984. This matter is before the Court on petitioner's Motion for Summary Judgment and respondent's Cross Motion for Partial Summary Judgment. The issue for decision *618 is whether petitioner is entitled to a deduction under section 162(a) with respect to a $ 2.5 million payment that petitioner's subsidiary made to the Federal Government in 1986 in settlement of its civil liability for submitting false claims for work performed under various Government contracts. Resolution of this issue turns on whether the payment in question (or any part thereof) constitutes a "fine or similar penalty" within the meaning of section 162(f). [2]
Summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision *619 may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). There being no dispute as to the material facts pertinent to the disposition of the pending motions, we will dispose of this matter based on the present record. Background
Stencel Aero Engineering Corp. (Stencel), a wholly owned subsidiary of Talley Industries, Inc. (Talley or petitioner), manufactures ejection seats for military aircraft. During the early 1980s, Stencel's primary customer was the U.S. Department of the Navy (Navy Department). Stencel's work with the Navy Department involved both the production of ejection seats and research and development projects through fixed-price contracts, cost-plus contracts, and contracts under which the price was subject to negotiation. On December 20, 1984, Federal agents served a search warrant at Stencel's place of business and seized certain records relating to invoices *620 that Stencel had submitted to the Navy Department. On March 8, 1985, a Federal grand jury sitting in the Western District of North Carolina returned a criminal indictment against Stencel and three of its senior employees. Stencel was charged under the indictment with one count of violating 18 U.S.C. section 287 (1982) (filing a false claim for payment with the Federal Government), one count of violating 18 U.S.C. section 286 (1982) (conspiracy to file a false claim for payment with the Federal Government), and 41 counts of violating or aiding and abetting the violation of 18 U.S.C. section 1001 (1982) (submission of a false claim in writing to an agency of the Federal Government). The indictment was based on allegations that, during specified dates in 1984, Stencel and certain named employees conspired to, and in fact did, alter employee time cards so that labor costs were shifted among Stencel's various Government contracts. On April 1, 1985, Stencel was notified by the regional office of the Defense Contract Administration Services that its invoices (whether under submission *621 or thereafter submitted) would not be paid unless supported by a sworn certificate signed by a Stencel officer attesting to the validity of the charges. As a result of this certification requirement, a substantial portion of Stencel's invoices remained unpaid through early 1986. On May 23, 1985, the Navy Department suspended Talley and Stencel from further Government contract work by placing the two companies on the Consolidated List of Debarred, Suspended and Ineligible Contractors. Although Talley's suspension was lifted on July 12, 1985, Stencel remained in suspended status until January 14, 1986. On June 12, 1985, Stencel entered into a plea agreement with the U.S. Attorney under which Stencel agreed to plead guilty to 10 counts of submitting false claims to the Government in violation of 18 U.S.C. section 1001. In exchange, the U.S. Attorney agreed: (1) To move to dismiss the remaining counts against Stencel; and (2) to drop its prosecution of certain of Stencel's officers. The plea agreement was accepted by the District Court for the Western District of North Carolina and a Judgment and Probation Commitment Order was entered against *622 Stencel on July 8, 1985. The judgment states in pertinent part that Stencel shall pay a fine of $ 100,000 ($ 10,000 for each of the 10 counts to which it pleaded guilty) and that "the Defendant shall make full restitution for all losses, to be determined by the U.S. Navy at a later date." [3]
*623 In September 1985, following discussions with the Navy Department, an attorney with the Civil Division of the U.S. Department of Justice (Justice Department) contacted Stencel for the purpose of resolving Stencel's civil liability stemming from its false billing practices. Under the circumstances, Stencel was exposed to potential liability under 10 U.S.C. section 2306(f) (1982) (the Truth in Negotiation Act or TINA), [4] *624 31 U.S.C. section 3729 (1982) (the False Claims Act or FCA), [5] and common law causes of action for breach of contract. At the time, the evidence developed during the criminal investigation indicated that virtually all of Stencel's departments had submitted false labor charges from as early as 1979. [6]
*625 Stencel entered into negotiations with the Justice Department regarding its civil liability in October 1985. The Navy Department's losses arising from the 10 incidents of mischarging to which Stencel pleaded guilty amounted to $ 1,885. In contrast, the Navy Department's losses from all false invoices submitted by Stencel from January 1, 1984, through December 20, 1984, were estimated to range from $ 240,000 to $ 358,000. [7]
On January 14, 1986, Stencel, Talley, and the Navy Department executed an interim agreement under which the Navy Department agreed to immediately lift the order suspending Stencel from further Government contract work in exchange for Stencel's agreement to continue to negotiate its civil liability in good faith and to immediately pay the Government $ 600,000 to be applied against that liability. On January 20, 1986, the Justice Department advised Stencel that, based upon an analysis of Stencel's invoices, *626 the Navy Department's actual losses for the period 1979 through December 20, 1984, were estimated to be $ 1,560,000. It appears that the Justice Department offered to settle the matter for $ 2.5 million on this date. By letter dated January 31, 1986, Stencel offered $ 2 million (less an offset for the $ 600,000 paid pursuant to the interim agreement) to settle all civil claims that the Government might have against the company. The January 31, 1985, letter states in pertinent part: All that Stencel seeks, thus, is assurance that its payment of $ 2,000,000.00 will in fact secure a release for all possible labor mischarging occurring [prior to December 20, 1984] * * *. Any other result would render the settlement incomplete and expose the Company to the threat of added liability for the same events over and above the double damages that the proposed payment is designed to represent. In addition, the settlement agreement between the parties ought to reflect the parties' understanding that the money paid is in discharge of Stencel's obligation under the court's sentencing order to make restitution to the Navy.
On February 7, 1986, the Justice Department responded to Stencel's *627 offer with a written counteroffer proposing that Stencel pay $ 2.5 million (less an offset for the $ 600,000 paid pursuant to the interim agreement). The matter was finally settled on February 18, 1986, consistent with the terms of the Justice Department's February 7, 1986, counteroffer. The settlement agreement includes a provision stating that the $ 2.5 million payment will satisfy Stencel's obligation to provide restitution under the Judgment and Probation Commitment Order entered on July 8, 1985. Petitioner deducted the $ 2.5 million that Stencel paid pursuant to the settlement agreement as an ordinary and necessary business expense on its consolidated Federal income tax return for the taxable year 1986 resulting in the carryback of a net operating loss. [8] Upon examining the return, respondent disallowed the deduction and determined a deficiency in petitioner's Federal income tax for the 1984 taxable year in the amount of $ 853,042. The deficiency notice states in pertinent part: STENCEL AERO- CIVIL SETTLEMENT
It has been determined that you are not entitled to a deduction for a civil settlement in the amount of $ 2,500,000 for the 1986 tax year since it has been *628 determined that the expense is a fine and/or similar penalty and not deductible under Internal Revenue Code Section 162(f). In addition, you have failed to establish that the expense qualifies as an ordinary and necessary business expense under Internal Revenue Code Section 162(a) or qualifies as a deductible loss under Internal Revenue Code Section 165(a). Furthermore, the deduction is not allowable under Internal Revenue Code Sections 162 or 165(a) because it would severely and immediately frustrate national public policy.
In response to the deficiency notice, petitioner invoked the jurisdiction of this Court by filing a petition for redetermination. [9] As indicated, the matter is now before the Court on petitioner's Motion for Summary Judgment and respondent's Cross Motion for Partial Summary Judgment. *629 Discussion
Section 162(a) states the general rule that a taxpayer is allowed a deduction for all ordinary and necessary expenses paid or incurred by the taxpayer in carrying on a trade or business. Section 162(f), however, proscribes a deduction under section 162(a) for "any fine or similar penalty paid to a government for the violation of any law." The phrase "fine or similar penalty" is defined in section 1.162-21(b), Income Tax Regs., as follows: (b) Definition. (1) For purposes of this section a fine or similar penalty includes an amount -- (i) Paid pursuant to conviction or a plea of guilty or nolo contendere for a crime (felony or misdemeanor) in a criminal proceeding; (ii) Paid as a civil penalty imposed by Federal, State, or local law, * * *; (iii) Paid in settlement of the taxpayer's actual or potential liability for a fine or penalty (civil or criminal); * * *
Section 1.162-21(b)(2), Income Tax Regs., provides that compensatory damages paid to a Government do not constitute a fine or penalty. The parties disagree whether Stencel's $ 2.5 million payment to the United States in settlement of its potential civil liability to the Navy Department *630 constitutes a fine or similar penalty within the meaning of section 162(f). Respondent's determination is presumed correct and petitioner bears the burden of proof to the contrary. Rule 142(a). Moreover, because deductions are a matter of legislative grace, petitioner must show that it comes squarely within the terms of the law conferring the benefit sought. Nelson v. Commissioner, 30 T.C. 1151, 1154 (1958). Petitioner, relying on Southern Pac. Transp. Co. v. Commissioner, 75 T.C. 497, 652 (1980), maintains that we need only decide whether the payment in question is punitive or compensatory in nature. Petitioner asserts that the payment should not be treated as a fine or similar penalty regardless of whether the payment is viewed as satisfying: (1) Stencel's obligation to provide restitution as directed in the Judgment and Probation Commitment Order entered against it on July 8, 1985; [10] or (2) Stencel's civil liability under FCA or TINA. Petitioner contends that the remedy provided by TINA, an adjustment to the contract price to correct for inaccurate information used in the negotiation process, is clearly compensatory *631 and, therefore, is not a fine or similar penalty under section 162(f). With regard to FCA, petitioner relies on a group of cases holding that civil awards recovered under FCA (following a criminal sanction for the same conduct) are viewed as compensatory in nature and, consequently, do not violate the Double Jeopardy Clause of the U.S. Constitution. See United States v. Hess, 317 U.S. 537 (1943); United States v. Killough, 848 F.2d 1523 (11th Cir. 1988). But cf. United States v. Halper, 490 U.S. 435 (1989). *632 Finally, petitioner contends that the parties' correspondence leading up to the settlement agreement, and the undisputed facts, support a finding that the payment was intended to be compensatory in nature. Respondent argues that petitioner's motion should be treated as a motion for partial summary judgment. More specifically, respondent maintains that petitioner failed to address whether the settlement payment qualifies as an ordinary and necessary business expense or whether a deduction for the payment would be contrary to national public policy, two of the three issues framed by the deficiency notice. Respondent also believes that petitioner's motion should be denied on its merits. Respondent contends that her determination should be sustained on the ground that the $ 2.5 million payment was made in satisfaction of the restitution order entered against Stencel in the criminal proceedings. See Waldman v. Commissioner, 88 T.C. 1384 (1987), affd. per curiam 850 F.2d 611 (9th Cir. 1988); sec. 1.162-21(b)(1)(i), Income Tax Regs. Respondent contends that the full payment should be treated as court-ordered restitution absent *633 express language in the settlement agreement to the contrary. In conjunction with the foregoing, respondent asserts that petitioner's understanding of the scope of the restitution order is undermined by the fact that the order purportedly grants the Navy Department full discretion to determine the amount of the restitution owing. In the alternative, respondent contends that at least $ 940,000 of the payment is properly characterized as a fine or similar penalty within the meaning of section 162(f) since that is the amount that Stencel paid in excess of the Navy Department's actual losses. Before addressing the parties' various arguments, we will briefly review the history surrounding the deductibility of fines and penalties (including civil penalties under FCA) and the development of section 162(f). Prior to 1969, taxpayers often were denied deductions for criminal fines or civil penalties paid to a Government where the allowance of a deduction arguably would frustrate sharply defined national or State policies proscribing particular types of conduct. See Tank Truck Rentals, Inc. v. Commissioner, 356 U.S. 30 (1958) (disallowing a deduction claimed *634 by the taxpayer with respect to amounts paid for violating State-imposed vehicle weight limits). This Court initially adopted a fairly strict approach regarding the deductibility of such fines and penalties. Specifically, in Faulk v. Commissioner, 26 T.C. 948 (1956), we denied a deduction claimed by the taxpayer for amounts paid to the Government pursuant to a civil award under FCA on the ground that national policy proscribing the conduct of submitting false claims to the Government would be frustrated if the deduction were allowed. In so holding, we rejected the taxpayer's argument that a deduction should be allowed for a portion of the payment that might be considered to be compensatory in nature. Id. at 951. Several years later, we reconsidered the stringent approach articulated in Faulk v. Commissioner, supra. In particular, in Grossman & Sons, Inc. v. Commissioner, 48 T.C. 15 (1967), we held that the taxpayer was entitled to a deduction for amounts paid to the Government in settlement of civil claims brought under FCA. In rejecting the Commissioner's *635 argument that the allowance of the deduction would frustrate national policy, we focused on the nature of the particular payment and whether the payment was intended to be compensatory or punitive in effect. Id. at 28. Because the settlement agreement specifically characterized the payment as damages for common law breach of contract, we concluded that the payment was intended to be compensatory and therefore deductible. Id. at 28-29. Under the circumstances, we did not find it necessary to decide whether a payment under FCA generally is compensatory or punitive in nature. Nevertheless, we observed that: It thus seems clear that the False Claims Act is at least partly remedial and compensatory in nature, although it may also be in part punitive. This history of the False Claims Act does not, in our opinion, support respondent's argument that no amounts paid or incurred in satisfaction of claims of the United States under the False Claims Act, whether by judgment or by settlement, are deductible because of public policy. We reject that argument. However, neither are we deciding that all amounts paid in *636 satisfaction of such claims are deductible.
Id. at 31. In 1969, 2 years after our decision in Grossman & Sons, Inc. v. Commissioner, supra, Congress resolved to clarify the law in this area with the enactment of several statutory provisions, including section 162(f). See Tax Reform Act of 1969, Pub. L. 91-172, sec. 902(a), 83 Stat. 710. The effect of these new provisions was to both codify the judicially created "public policy" doctrine and limit its application. See Stephens v. Commissioner, 93 T.C. 108, 112 (1989), revd. 905 F.2d 667 (2d Cir. 1990). In this regard, S. Rept. 91-552, at 273-274 (1969), 1969-3 C.B. 423, 596-597, states in pertinent part: Present law. -- At the present time there is not [a] statutory provision setting forth a general "public policy" basis for denying deductions which are "ordinary and necessary" business deductions. Nevertheless, a number of business expenses have been disallowed on the ground that the allowance of these deductions would be contrary to Federal or State "public policy." *637 This has been true, for example, in the case of fines. One question which arises in this regard is whether deductions should be allowed for damages paid to a private party in a cause of action in which the successful party is entitled to damages in a greater amount than the economic loss demonstrated by him. Under section 4 of the Clayton Act, for example, a person injured by an antitrust violation may sue for damages and recover three times the amount of economic loss established. * * * General reasons for change. -- The question as to whether antitrust treble damage payments should be deductible must be viewed both from the standpoint of antitrust policy and from the standpoint of tax policy. From the standpoint of antitrust policy, the basic issues are the extent of the penalties intended and whether their impact should be reduced by permitting them to reduce taxes which otherwise would have to be paid. From the standpoint of tax policy, there generally has been a reluctance to deny business expenses on the ground that this departs from the concept of a tax imposed on actual net business income. There still remains, however, the question as to what is an ordinary and *638 necessary business expense. The Supreme Court in the Tank Truck Rental case, for example, in holding that the payment of fines could not be considered as ordinary and necessary, stated: A finding of "necessity" cannot be made, however, if allowance of the deduction would frustrate sharply defined national or State policies proscribing the particular types of conduct evidenced by some governmental declaration thereof.
On the same grounds, it appears appropriate to deny deductions for bribes, illegal kickbacks, and the penalty portion of antitrust treble damage payments. * * * Explanation of the provision. -- The provision added by the committee amendments denies deductions for four types of expenditures [including] fines or similar penalties paid to a government for the violation of any law * * *. The provision for the denial of the deduction for payments in these situations which are deemed to violate public policy is intended to be all inclusive. Public policy, in other circumstances, generally is not sufficiently clearly defined to justify the disallowance of deductions. [Emphasis added.]
While initially in doubt, it is now evident that the phrase "fine *639 or similar penalty" contained in section 162(f) proscribes a deduction for both criminal and civil penalties. See True v. United States, 894 F.2d 1197, 1204 (10th Cir. 1990); Colt Indus., Inc. v. United States, 880 F.2d 1311, 1313 (Fed. Cir. 1989); S. Rept. 92-437, at 73-74 (1971), 1972-1 C.B. 559, 600; see also Southern Pac. Transp. Co. v. Commissioner, 75 T.C. 497, 652 n.177 (1980). When confronted with issues involving section 162(f), we have applied the provision by focusing on the nature of the disputed payment. We have held that section 162(f) precludes a deduction for a civil penalty imposed for the purpose of enforcing the law and as punishment for a violation of the law. Waldman v. Commissioner, 88 T.C. 1384, 1387 (1987), affd. per curiam 850 F.2d 611 (9th Cir. 1988); Huff v. Commissioner, 80 T.C. 804, 824 (1983); Southern Pac. Transp. Co. v. Commissioner, supra at 652. On the other hand, we have held that section 162(f) does not preclude a deduction for *640 a civil penalty that is imposed to encourage prompt compliance with a requirement of the law, or as a remedial measure to compensate another party for expenses incurred as a result of the violation. See Mason and Dixon Lines, Inc. v. United States, 708 F.2d 1043, 1047 (6th Cir. 1983); S & B Restaurant, Inc. v. Commissioner, 73 T.C. 1226, 1231-1232 (1980); S. Rept. 92-437, supra, 1972-1 C.B. at 600. But cf. Colt Indus., Inc. v. United States, supra at 1314. With the foregoing as background, we return to the parties' various contentions. As indicated, the parties dispute the effect of the order for restitution contained in the Judgment and Probation Commitment Order entered against Stencel on July 8, 1985. The settlement agreement between Stencel and the Justice Department executed on February 18, 1986, states that the $ 2.5 million payment satisfies Stencel's obligation to provide restitution to the Navy Department as directed by the District Court. Focusing on this aspect of the settlement agreement, respondent determined that the payment represents *641 an amount paid "pursuant to conviction or plea of guilty or nolo contendere for a crime (felony or misdemeanor) in a criminal proceeding", and, thus, may not be deducted by virtue of section 1.162-21(b)(1)(i), Income Tax Regs.
Petitioner contends that if any part of the $ 2.5 million payment is properly allocable to the order for restitution, it should be limited to either $ 10,000 (the amount of actual losses attributable to the 42 incidents of mischarging alleged in the indictment) or $ 1,885 (the amount of actual losses attributable to the ten incidents of mischarging to which Stencel pleaded guilty). Regardless of whether a specific amount of the payment is considered to be restitution, petitioner contends that there is no basis for concluding that such restitution constitutes a fine or similar penalty within the meaning of section 162(f) on the ground that the restitution order was intended to be wholly independent of the criminal sentence imposed on Stencel. Notably, petitioner does not contest the validity of section 1.162-21(b)(1)(i), Income Tax Regs.
Based upon our review of the transcript of the criminal sentencing proceedings and the Judgment and Probation Commitment *642 Order that followed, we are persuaded that the District Court intended for Stencel to pay restitution to the Navy Department limited to the ten incidents of mischarging to which Stencel pleaded guilty. [11] Although the settlement agreement does not purport to allocate a specific sum to such restitution, there does not appear to be any dispute that the Navy Department's losses for the ten incidents of mischarging in question totaled $ 1,885. Contrary to petitioner's position, however, we *643 find that this amount is properly characterized as a fine or similar penalty within the meaning of section 162(f). While the restitution order undoubtedly was intended to compensate the Navy Department for the losses it sustained as the result of Stencel's conduct, we conclude that the restitution falls within the literal terms of section 1.162-21(b)(1)(i), Income Tax Regs.; that is, it represents an amount paid by Stencel pursuant to a plea of guilty for a crime. See, e.g., Waldman v. Commissioner, supra at 1387 (1987). Absent an argument by petitioner that this regulation is invalid, we need go no further. The criminal restitution order aside, we next consider whether any part of the balance of the $ 2.5 million payment constitutes a fine or similar penalty within the meaning of section 162(f). [12] We agree with petitioner that resolution of this question turns on whether the payment was intended, in whole or in part, to compensate the Navy Department for losses sustained as a result of Stencel's conduct, or to punish Stencel for violating the law. Southern Pac. Transp. Co. v. Commissioner, 75 T.C. 497, 652 (1980). *644 Unfortunately, unlike the settlement agreement at issue in Grossman & Sons, Inc. v. Commissioner, 48 T.C. 15 (1967), the settlement agreement in the instant case does not purport to characterize the $ 2.5 million payment (or any part of it) as either compensation for the Navy Department's actual losses or as a civil penalty. The settlement agreement merely states that the payment is being made in exchange for the Government's agreement to surrender certain claims it might have against Stencel under TINA and FCA. Under the circumstances, an analysis of both of TINA and FCA, as well as the facts and circumstances surrounding the adoption of the settlement agreement, will be necessary in order to determine whether the balance of the settlement payment constitutes a fine or similar penalty within the meaning of section 162(f). We reviewed *645 the history and purpose of TINA in Sundstrand Corp. v. Commissioner, 98 T.C. 518, 548-551 (1992), affd. 17 F.3d 965 (7th Cir. 1994). As explained in that opinion, TINA provides for an adjustment to the contract price and modification of the contract where inaccurate or incorrect data are used in the negotiation process. There being no dispute that TINA adjustment is compensatory in nature, we agree with petitioner that any portion of the $ 2.5 million payment allocable to such claims does not constitute a fine or similar penalty within the meaning of section 162(f). FCA, on the other hand, allows for an award to the Government consisting of a civil penalty of $ 2,000, an amount equal to two times the amount of damages the Government sustains because of the act of that person, and costs of the civil action. See supra note 5. Although we reviewed the lengthy history of FCA in Grossman & Sons, Inc. v. Commissioner, supra at 30-31 (an exercise that we need not repeat here), we did not find it necessary to characterize the remedies provided under the act as either compensatory or punitive. *646 For present purposes, we agree with the observations made in Grossman & Sons, Inc. v. Commissioner, supra, that the remedies provided under FCA appear to have both compensatory and punitive characteristics. Id.
As previously mentioned, petitioner asserts that FCA is remedial or compensatory in nature based on the Supreme Court's opinion in United States v. Hess, 317 U.S. 537, 551-552 (1943). In that case, the Supreme Court resolved that the various remedies provided under FCA are not penal in nature, and, therefore, a civil award under FCA may be enforced against a defendant previously subjected to a criminal sanction for the same conduct without violating the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution (the Double Jeopardy Clause). Respondent counters that the outcome in Hess stands in contrast to United States v. Halper, 490 U.S. 435 (1989). In the latter case, the Supreme Court concluded that, because a strict enforcement of the remedies provided under FCA resulted in a civil award to the Government bearing no "rational relation" to the Government's *647 actual losses, enforcement of the award against a defendant who had previously been subjected to a criminal penalty for the same conduct would violate the Double Jeopardy Clause. Id. at 452. Accordingly, the case was remanded to the District Court to determine the Government's actual losses and to allow for a recovery of those losses. Id. Read in conjunction, United States v. Hess, supra, and United States v. Halper, supra, stand for the proposition that awards under FCA generally are considered compensatory in nature. However, where an award under FCA bears no rational relation to the Government's actual losses, the part of the award in excess of actual losses may be considered penal in nature. United States v. Halper, supra at 452. Where a payment arguably has both compensatory and punitive characteristics, we are obliged to determine which purpose the payment was designed to serve. Waldman v. Commissioner, 88 T.C. at 1387. Thus, we turn to the record in the instant case and the circumstances surrounding *648 the adoption of the settlement agreement. We find it significant that in negotiating the settlement agreement, the Government never suggested that it was attempting to exact a civil penalty from Stencel. Moreover, the Government made it known that the Navy Department's estimated losses arising from Stencel's conduct totaled $ 1,560,000 for the period 1979 to 1984. When this figure, which apparently does not include the Government's costs of investigation, is compared with the $ 2.5 million amount that the parties finally settled on, it is evident that the Government received an amount substantially less than double damages. In light of these facts, we conclude that the settlement was not intended to be penal or punitive but rather was compensatory in nature. Accordingly, we hold that the settlement payment (other than the $ 1,885 amount allocable to restitution as discussed above) does not constitute a "fine or similar penalty" within the meaning of section 162(f). See sec. 1.162-21(b)(2), Income Tax Regs.
Having resolved that section 162(f) does not preclude petitioner from claiming a deduction for the vast majority of the disputed $ 2.5 million payment, we are left with respondent's *649 argument that petitioner's motion should nonetheless be treated as a motion for partial summary judgment. According to respondent, this case is not ripe for summary judgment on the ground that petitioner failed to address two issues framed by the deficiency notice: (1) Whether the $ 2.5 million payment constitutes an ordinary and necessary business expense within the meaning of section 162(a); and (2) whether allowing such a deduction would frustrate public policy. Contrary to respondent's position, we find that all matters in dispute are ripe for disposition at the present time. From our perspective, the record in this case amply supports the conclusion that the disputed payment constitutes an ordinary and necessary business expense. While the payment indeed is unusual in that an item of this sort is not expected in the normal course of Stencel's business, the payment nonetheless may be considered "ordinary" under section 162(a) to the extent that it directly relates to contracts entered into in the normal course of Stencel's business and is not an expense that normally would be capitalized. See Welch v. Helvering, 290 U.S. 111, 114 (1933); Mason and Dixon Lines, Inc. v. United States, 708 F.2d 1043, 1046 (6th Cir. 1983); *650 Salt v. Commissioner, 18 T.C. 182, 185 (1952). Similarly, the payment represents a "necessary" expense given that the payment was required so that Stencel could continue in business. Commissioner v. Tellier, 383 U.S. 687, 689 (1966). As noted earlier, Stencel had entered into an interim agreement with the Navy Department under which Stencel agreed to negotiate its civil liability in good faith in exchange for the latter's promise to immediately lift the company's suspended status. Because the payment in question was made for the overriding purpose of allowing Stencel to continue in business, we hold that the payment constitutes an ordinary and necessary business expense. See Grossman & Sons, Inc. v. Commissioner, 48 T.C. 15, 29-30 (1967). We likewise reject respondent's contention that the availability of a deduction to petitioner under section 162 somehow hinges on generalized public policy considerations. As previously indicated, section 162(f) represents a codification of, and limitation on, the application of the judicially created "public policy" doctrine. [13] *652 In this regard, S. *651 Rept. 91-552 (1969), 1969-3 C.B. 423, 597, states in pertinent part: The provision for the denial of the deduction for payments in these situations which are deemed to violate public policy is intended to be all inclusive. Public policy, in other circumstances, generally is not sufficiently clearly defined to justify the disallowance of deductions.
In short, public policy considerations are embodied within section 162(f). See Stephens v. Commissioner, 905 F.2d at 672; Mason and Dixon Lines, Inc. v. United States, supra at 1046; see also Rev. Rul. 77-126, 1977-1 C.B. 47, 48. Consequently, where an amount paid to a Government as an ordinary and necessary business expense is not considered to be a fine or similar penalty within the meaning of section 162(f), a deduction is permitted for the payment under section 162 notwithstanding other public policy considerations. [14]
To reflect the foregoing, An appropriate order will be issued. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The petition includes an allegation that respondent erred in failing to take unspecified tax credits into account in computing the deficiency for the taxable year in dispute. However, this issue is not mentioned in petitioner's Motion for Summary Judgment, and we, therefore, deem it to be conceded.↩
3. During the sentencing hearing, Stencel's counsel addressed the issue of restitution as follows: In terms of restitution, I would submit, Your Honor, that under Fourth Circuit law, * * * the appropriate course of action would be for the ten counts to be ordered to have restitution made. The balance we will be working with the Navy, and basically through their district proceeding we will be in a position for restitution to be made in whatever amount is deemed due and owing.
After fining Stencel $ 10,000 on each of the counts to which it pleaded guilty, the court stated: Now it is further ordered that the defendant make full and complete restitution to the United States government for all losses sustained in connection with these violations. Such sum shall be determined by an audit which is to be performed by the United States Navy.↩
4. At the time of Stencel's indictment, 10 U.S.C. sec. 2306(f) (1982) (the Truth in Negotiation Act or TINA), provided in pertinent part: (1) A prime contractor or any subcontractor shall be required to submit cost or pricing data under the circumstances listed below, and shall be required to certify that, to the best of his knowledge and belief, the cost or pricing data he submitted was accurate, complete and current -- (A) prior to the award of any negotiated prime contract under this title where the price is expected to exceed $ 500,000; * * * (2) Any prime contract or change or modification thereto under which such certificate is required shall contain a provision that the price to the Government, including profit or fee, shall be adjusted to exclude any significant sums by which it may be determined by the head of the agency that such price was increased because the contractor or any subcontractor required to furnish such a certificate, furnished cost or pricing data which, as of a date agreed upon between the parties (which date shall be as close to the date of agreement on the negotiated price as is practicable), was inaccurate, incomplete, or noncurrent * * *.
The Truth in Negotiation Act is presently codified as 10 U.S.C. sec. 2306a (1988)↩.
5. At the time of Stencel's indictment, 31 U.S.C. sec. 3729 (1982) (the False Claims Act or FCA) provided in pertinent part: A person not a member of an armed force of the United States is liable to the United States Government for a civil penalty of $ 2,000, an amount equal to 2 times the amount of damages the Government sustains because of the act of that person, and costs of the civil action, if the person -- (1) knowingly presents, or causes to be presented, to an officer or employee of the Government or a member of an armed force a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved * * *.
The False Claims Act was amended in 1986 (subsequent to the execution of the settlement agreement in dispute) to provide for an award to the Government consisting of: (1) a civil penalty of not less than $ 5,000 and not more than $ 10,000; and (2) three times the amount of damages sustained by the Government. See 31 U.S.C. sec. 3729(a) (1988)↩.
6. The parties agree that, as of Sept. 1985, the statute of limitations applicable to claims under the False Claims Act had expired with respect to 1979, thus limiting Stencel's civil liability for 1979 to claims under TINA and common law contract causes of action.↩
7. This estimate was provided to the Government by the Defense Contract Audit Agency.↩
8. Petitioner did not claim a deduction with respect to the $ 100,000 fine that Stencel paid pursuant to the Judgment and Probation Commitment Order entered on July 8, 1985.↩
9. At the time the petition was filed, petitioner's principal place of business was in Phoenix, Arizona.↩
10. Petitioner contends that the maximum amount of the payment that can be treated as restitution under the Judgment and Probation Commitment order is $ 10,000, the total amount that the Government arguably could have lost as a result of the 42 instances of mischarging described in the indictment. In any event, petitioner maintains the District Court's order for restitution was wholly independent of the sentence imposed on Stencel and was not intended to be punitive in nature.↩
11. Petitioner argues that the District Court's authority to order restitution was at best limited to the ten specified counts to which petitioner pleaded guilty, citing Hughey v. United States, 495 U.S. 411↩ (1990). Respondent did not clearly respond to this argument. In any event, since we have concluded that the District Court did so limit its order, we need not decide the extent of the District Court's authority to order restitution with respect to the counts in the indictment that were dismissed.
12. The balance is the $ 2.5 million less $ 1,885 representing the losses arising from the ten incidents of mischarging to which Stencel pled guilty.↩
13. But see Spitz v. United States, 432 F.Supp. 148, 150 (E.D. Wis. 1977), where the District Court rejected the Government's argument that sec. 162(f)↩ should apply and nonetheless addressed the Government's alternative argument that allowance of the deduction would violate public policy.
14. Respondent's argument that public policy concerns provide an independent basis for disallowing the deduction at issue conflicts with sec. 1.162-1(a), Income Tax Regs., which states in pertinent part: A deduction for an expense paid or incurred after December 30, 1969, which would otherwise be allowable under section 162↩ shall not be denied on the grounds that allowance of such deductions would frustrate a sharply defined public policy.