Need, Justice {Bet.),
sitting by designation, delivered the opinion of the court:
Plaintiff sues to recover an alleged overpayment of federal corporation income taxes for the year 1945 in the amount of $27,588 plus interest. The issue basic to liability is whether the plaintiff, a government contractor, may deduct as an “ordinary and necessary” business expense[1] damages paid to the United States under the provisions of a contract prohibiting the utilization of child labor in its performance. For the reasons set out hereinafter we conclude that these amounts were not deductible and that judgment must be for *592 the defendant. Thus, we need not determine whether the statute of limitations has run on the plaintiff’s claim.[2]
From 1941 through 1943 the plaintiff’s Bussman Manufacturing Division was engaged in the performance of United States Government contracts calling for the manufacture of fuses and related products; each of these contracts, as required by the Walsh-Healey Public Contracts Act, 49 Stat. 2036, contained provisions representational in nature bu't in effect prohibiting the employment of boys under 16 and girls under 18 years of age in the performance of the contract.[3] Section (f) of the agreement reads as follows:
“Any breach or violation of any of the foregoing representations and stipulations [including the representation relating to child labor] shall render the party responsible therefor liable to the United States of America for liquidated damages, in addition to damages for any other breach of the contract, in the sum of $10' per day for each male person under 16 years of age or each female person under 18 years of age, . . . knowingly employed in the performance of the contract. . . .” Finding No. 5.
Beyond question large numbers of underage girls and one underage boy, about 12% of the total force, had been employed by Bussman during the period in question. The fore- *593 ladies were instructed not to permit underage employees to work on government contracts, but there was no evidence as to the success of this plan in forestalling violations of the agreement. Contrary to the regulations promulgated by the Secretary of Labor under § 4 of the Act, no records had apparently been kept which would show which individuals worked on these contracts. Under such circumstances the regulations provided:
“* * * it shall be presumed until affirmative proof is present to the contrary that all employees in the plant, from the date of award of any such contract until the date of delivery of the materials, supplies, articles or equipment, were engaged on such Government contract.” 41 CFE 50-201.501 (c).
Acting pursuant to this presumption, in early 1944 the United States Department of Labor sent a letter to the president of Bussman charging that the Division had employed child labor in contravention of the contracts and requesting payment of “liquidated damages in the amount of $689,650.”
In June of that year a complaint against plaintiff and certain of its officers charging a violation of the child labor provisions was filed within the Department of Labor. In December plaintiff offered $68,965 (10% of the amount alleged to be due)[4] in settlement of the Government’s claim; this was refused by the Department which informed plaintiff that it had a policy against such compromise, but that a more detailed investigation into the employment situation might show that less than the claimed amount was actually due. In June, 1945, plaintiff offered $68,970 “in payment of liquidated damages for the employment of female minors . . . for 6897 days . . . with the understanding that the acceptance of the above liquidated damages ... is in full satisfaction of all matters which are the subject matter of the complaint of the Secretary of Labor herein against the respondents, and that said complaint will be withdrawn upon such acceptance.” This offer was accepted by the Department. It appears likely that this was in fact the result of *594 compromise rather than, further investigation. As found by the Commissioner plaintiff chose his alternative, “primarily with the objective of avoiding the risks, and the expense, inconvenience and other disruptive consequences of litigation.”
Recent decisions of the Supreme Court have adumbrated the issue now before us. Commissioner v. Sullivan, 356 U.S. 27; Tank Truck Rentals v. Commissioner, 356 U.S. 30; Hoover Motor Express Co. v. United States, 356 U.S. 38. We believe that under these cases deduction of amounts assessed as penalties pursuant to specific legislation virtually always must be treated as frustrating “sharply defined national or state policies” unless those charged with the administration or interpretation of the statute have indicated that deductibility will not undercut the governmental punitive purpose.[5] “Deduction of fines and penalties uniformly has been held to frustrate . . . policy in severe and direct fashion by reducing the ‘sting’ of the penalty prescribed by the . . . legislature.” Tank Truck Rentals, supra at 35-36.[6]
The Secretary of Labor did characterize these Walsh-Healey Act payments as “remedial” and not penal in nature. In re Evalyn Fehrman De Wolfe, Case No. PC-250, April 15, 1946, 6 Wage and Hour Cases 1165. But we believe that he mistook the congressional purpose. The legislative history makes clear that these payments were designed as penalties. S. Rep. No. 1157, 74th Cong., 1st Sess. 2; H. R. Rep. No. 2946, 74th Cong., 2d Sess. 5; 79 Cong. Rec. 12074 (Senator Walsh); 80 Cong. Rec. 10002 (Representative Healey). Under such circumstances the Secretary’s determination is not determinative of the punitive nature of the enactment.
In the present context a penalty is any assessment not compensatory in nature and not designed to prevent unjust enrichment, as were the exactions of overcharges by the Government under the OPA. Cf. Jerry Rossman Corp. v. Commissioner, 175 F. 2d 711 (C. A. 2d). Obviously these *595 “damage” payments were not designed to make the United States whole for any loss which it incurred. Conceivably child labor is poor labor, but the $10 per day sum is not related to defects in workmanship. Nor can it be said that the plaintiff was unjustly enriched by the use of underage employees.
To be sure amounts paid by a contractor to a private party as “penalties” for failure to comply with its obligations under the contract would ordinarily be deductible since no specific legislation there expresses a state policy. Cf. Camloo Fastner, Inc. v. Commissioner, 10 T. C. 1024. Similarly amounts paid to a governmental agency as penalties to secure performance of a contract could properly be regarded as a “necessary” expense of doing business within the meaning of the Tank Truck case even if prescribed by statute. But here the sums paid under the Walsh-Healey provisions of the contract are wholly unrelated to the specific objectives designed to be secured by that particular agreement. The Government in requiring that the clauses in question be inserted in its contracts was not acting like a private purchaser of fuses, but was using, legitimately, its far-reaching power to contract as it pleases[7] to secure objectives of a social and economic nature. The purpose of the Walsh-Healey Act “is to use the leverage of the Government’s immense purchasing power to raise labor standards.” Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 507. The source of national power cannot, of course, affect the sharpness of national policy. Thus, we conclude that the damages provided for by the contract were in fact penalties designed to assure that child labor would not be used in the performance of government contracts and, as such, are not deductible. See Davenshire, Inc. v. Commissioner, 12 T. C. 958.
Sums paid in compromise of such a liability take on the character of the underlying asserted obligation and in this case are similarly nondeductible. See Commissioner v. Longhorn Portland Cement Co., 148 F. 2d 276 (C. A. 5th). There is no force to the argument that since counsel fees may be *596 deductible, because state or national policy would not thereby be frustrated,[8] a compromise payment designed to save such expenditure should also be held a “necessary” business expense to the extent that it does not reflect payment for actual violations. We have no way of knowing whether and to what extent plaintiff in fact violated the Act, and trial of that issue would obviously defeat the very purpose of the compromise. It is not the fact of compromise agreement that controls but that allowance of sums paid for violation blunts the sting of the penalty. Thus, we hold that plaintiff did not overpay its income tax for the year 1945, and that the defendant is entitled to judgment. Plaintiff is not entitled to recover, and its petition will be dismissed.
It is so ordered.
DtjRKee, Judge/ and JoNes, Chief Judge, concur.

 The Internal Revenue Code of 1939 provided a deduction for “[a]ll the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered . . . .” Section 23(a)(1)(A). Now, as amended, §162 of the 1954 Code.

 This claim for refund was filed with tie District Director in 1953, more than 3 years after the return was filed and more than 2 years from the time the tax was paid. Therefore, § 322(b) (1). of the 1939 Code would ordinarily bar recovery. ¿Plaintiff relies upon § 3801(b) (6) of the 1939 Code which provides that under certain circumstances an adjustment in the tax shall be made if a determination disallows a deduction “which should have been allowed to, but was not allowed to, the taxpayer for another taxable year . . . .” Plaintiff had filed a suit for refund with respect to its 1944 excess profits tax in the federal District Court for the Northern District of Illinois on the ground that the deduction here in question should have been allowed to reduce that tax; the suit was dismissed with prejudice on October 1, 1952 by stipulation of the parties. The united States makes two arguments peculiar to this issue. It contends, first, that § 3801 (b) (6) contemplates that the same kind of tax must be involved in the prior determination and In the present suit, and thus does not here apply because plaintiff contested liability for excess profits tax in the District Court while income tax liability is here in issue. Second, the Government argues that a dismissal with prejudice pursuant to stipulation does not constitute the required “determination.”

 On April 21, 1942, the Secretary of Labor issued an order under which 16 and 17-year-old females could be employed on government contracts. 7 Fed. Keg. 3003. This order is not here material because it only applied if these employees did not work in excess of 8 hours per day. By plaintiff’s own admission it utilized them on a 9-hour shift.

 This figure was arrived at, it seems, by determining the proportion of Walsh-Healey production to the total (about 9%) and offering approximately that percentage of the amount claimed.

 E. g., penalties assessed because of Innocent violation may be deductible If the Administrator himself distinguishes between willful and innocent violations. See 356 U.S. at 37.

 The Supreme Court may be thought to have approved the result in Davenshire, Inc. v. Commissioner, 12 T. C. 958, by citing it among other cases in a note following the above-quoted portion of the opinion. In D aven shire the Tax Court held, in a factual situation similar to the one presented here, that the “damages” paid were not deductible.

 See Perkins v. Lukens Steel Co., 310 U.S. 113, 127. But cf. United States v. Butler, 297 U.S. 1, 72. See also Note, Unconstitutional Conditions, 73 Harv. L. Rev. 1595, 1602.

 See Commissioner v. Heininger, 320 U.S. 467.