**UNITED STATES of America, Plaintiff,**

v.

**Marie E. HAYES, M.D., Defendant.**

**No. C–85–366–D.**

United States District Court,
M.D. North Carolina,
Durham Division.

April 25, 1986.

Richard L. Robertson, Asst. U.S. Atty., Greensboro, N.C., for plaintiff.

William B. Dannelly and C. Steven Mason, Raleigh, N.C., for defendant.

## MEMORANDUM OPINION

ERWIN, District Judge.

This matter is before the court on motion by the United States for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The United States seeks to recover treble damages plus accrued interest for an alleged breach of contract by the defendant pursuant to 42 U.S.C. § 254*o*.

The basic facts of the case are uncontroverted. The defendant is a medical doctor residing in Chapel Hill, North Carolina. In June 1978, the defendant applied pursuant to 42 U.S.C. § 254*l* for an award under the National Health Service Corps (NHSC) Scholarship Program to fund her study of medicine at Tufts University School of Medicine. Defendant stated in her application that she intended to specialize in family medicine and work in a rural area. Upon acceptance of her application, defendant became obligated under the terms of the scholarship contract to perform one year of service in the NHSC for each year of scholarship awarded or two years, whichever was greater. 42 U.S.C. § 254*l* (f)(1)(B)(iv). Defendant was awarded a scholarship in the amount of $13,115 for the 1978–1979 school year. In June 1979, defendant received an extension of her scholarship award to include the 1979–1980 school year in the amount of $16,430. Subsequently, the defendant was granted a deferment by the Secretary of Health and Human Services to complete a three-year residency in internal medicine at North Carolina Memorial Hospital in Chapel Hill, North Carolina.

During the second year of the defendant's residency, she notified the NHSC Scholarship Program that she had abandoned her internal medicine residency and had initiated a three-year residency in dermatology. The defendant requested permission to serve in the NHSC as a dermatologist. This request was denied, and defendant was requested to prepare for placement. Defendant failed to participate in placement procedures and failed to perform her service under the scholarship contract.

On March 25, 1985, the Government instituted this action.

The defendant admits that she is in breach of her scholarship contract and that she is indebted to the Government. However, the defendant disputes the amount of the debt and argues that 42 U.S.C. § 254*o*, the treble damages provision of the NHSC Scholarship Program, is penal in nature and thus is unenforceable, as it is an invalid liquidated damages provision. The defendant argues that this provision creates a genuine issue of material fact and asserts, therefore, that the case should survive the Government's motion for summary judgment. The motion has been briefed by both parties and is ready for a ruling.

### Discussion

To sustain a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, the movant must demonstrate that there is no genuine issue as to any material fact. *Phoenix Savings and Loan, Inc. v. Aetna Casualty & Surety Co.*, 381 F.2d 245 (4th Cir.1967). This is a strict standard, and any doubts as to the existence of a genuine issue of material fact are to be resolved against the movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

In the instant case, the defendant does not dispute the contractual validity of the scholarship agreement. Defendant contends that a genuine issue of material fact exists as to the validity of the treble damages provision of the statute and scholarship contract. Unfortunately, the court cannot agree. Under the NHSC Scholarship Program, if an individual, for any reason, breaches her written contract by failing to either begin or complete her scholarship service obligation,

> [T]he United States shall be entitled to recover from the individual an amount determined in accordance with the formula
>
> $$A = 3\emptyset \, \frac{(t\text{-}s)}{t}$$
>
> in which 'A' is the amount the United States is entitled to recover, 'O' is the

sum of the amount paid under this subpart to or on behalf of the individual and the interest on such amount which would be payable if at the time it was paid it was a loan bearing interest at the maximum legal prevailing rate, as determined by the Treasurer of the United States; 't' is the total number of months in the individual's period of obligated service; and 's' is the number of months of such period served by him in accordance with section 338B or a written agreement under section 338C. Any amount of such damages which the United States is entitled to recover under this subsection shall, within the one year period beginning on the date of the breach of the written contract, be paid to the United States. 42 USC § 254o(b)(1).

This provision appears in the NHSC scholarship contract and is referenced in the NHSC Scholarship Program regulations, 42 C.F.R. § 62.10(c).

■ Ordinarily, when construing liquidated damages provisions in government contracts, the courts turn to general principles of contract law. *See United States v. Bethlehem Steel Co.*, 205 U.S. 105, 27 S.Ct. 450, 51 L.Ed. 731 (1907). Generally, it has been the modern trend to allow liquidated damages clauses in contracts. *See Wise v. United States*, 249 U.S. 361, 365, 39 S.Ct. 303, 304, 63 L.Ed. 647 (1919).

Today the law does not look with disfavor upon "liquidated damages" provisions in contracts. When they are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract, they are enforced.... They serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable, as is the case in many government contracts.... And the fact that the damages suffered are shown to be less than the damages contracted for is not fatal. These provisions are to be judged as of the time of making the contract. (Citations omitted.)

*Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411–12, 68 S.Ct. 123, 125–26, 92

L.Ed. 32 (1947). The setting of civil damages as multiples of actual damages is not uncommon and has long been upheld by the courts. *See, e.g., United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, *reh'g denied*, 318 U.S. 799, 63 S.Ct. 756, 87 L.Ed. 1163 (1943) (upholding the double damages provisions of the False Claims Act, 31 U.S.C. § 3729, against the charge that it was punitive in nature); *Lehrman v. Gulf Oil Corp.*, 464 F.2d 26 (5th Cir.), *cert. denied*, 409 U.S. 1077, 93 S.Ct. 687, 34 L.Ed.2d 665 (1972) (holding suit in treble damages by a single individual valid under Sherman Anti-Trust Act, 15 U.S.C. § 15).

■ In applying the above criterion to the case *sub judice*, this court can only conclude that the liquidated damages provision contained in the scholarship application is valid and enforceable and does not constitute a penalty. There is no dispute that the parties bargained at arm's length. The defendant certainly had notice of the potential for damages upon breach at the time she signed the application. It is clear to the court that a binding contract was formed at the time of acceptance and approval of the defendant's application by the Secretary on September 1, 1978.

There is no question that Congress has the authority to promulgate statutes and regulations to accomplish and further the purposes of statutes and other congressional acts. *See generally, McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). Further, it is uncontradicted that the statutes in question were created for the purpose of serving a proper governmental function. Clearly the scholarship program exists to help students with financial aid, who, in turn, help the government by performing their part of the bargain—rendering medical assistance in areas where health services and personnel are inadequate or in need. The district courts have been quick to enforce similar service provisions under the Armed Forces Professions Scholarship Program, 10 U.S.C.

§ 2120, *et seq. Acko v. Brown*, 489 F.Supp. 216 (D.Minn.1980); *see also Jackson v. Allen*, 553 F.Supp. 528 (D.Mass.1982). The congressional history of the statute in question is replete with references to the national maldistribution of health services. *See* H.R.Rep. No. 266, 94th Cong., 2nd Sess. 22–31 (1976), *reprinted in* 1976 U.S. Code Cong. & Ad.News 4947, 4964–73. "Legislative history makes it clear that the NHSC Scholarship Program was not created solely to subsidize the medical education of future health care practitioners:

> The Committee wishes to emphasize in the strongest possible terms that it does not view the National Health Service Corps scholarship program as a mechanism solely intended to subsidize health professional education. Rather, in return for substantial subsidization of the costs of education, the committee views the National Health Service Corps Scholarship program as a means to overcome a geographic maldistribution of health professionals.

*United States v. Swanson*, 618 F.Supp. 1231, 1235–36 (E.D.Mich.1985), *appeal filed*, (October 24, 1985), *appeal dismissed*, (November 25, 1985), *appeal reinstated*, (December 27, 1985) (quoting S.Rep. No. 887, 94th Cong., 1st Sess. 201 (1975)). Thus, the scholarship contract is a two-way street. In exchange for the funds to further their medical education, students are expected to serve their fellow citizens through the NHSC upon completion of their studies.

The court finds that it is virtually impossible to determine the amount of damages to the government by the defendant's breach. "A physician or health care professional is not a 'fungible handyman.'" *Swanson*, 618 F.Supp. at 1243. That is, one cannot speculate in the abstract as to the value of a particular physician's services. A variety of factors, which could not be known at the time of contract formation, including ability, skills, specialties, levels of training and education, placement, etc., are

all inherent in determining the value of a physician's practice; nor can it be known with what dedication a health care provider will apply herself.

Therefore, it is clear that the liquidated damages provision of the scholarship contract has a direct relation to actual damages, as it is an attempt to fairly and reasonably set just compensation in the event of a breach by the scholarship recipient. In *Swanson,* facing the same issue, the district court, *per* Freeman, Senior District Judge, held:

> For the above reasons, this Court holds that the liquidated damage provision does not operate as a penalty and is valid and enforceable in a court of law. In addition, to the extent that the Defendant raises the argument that the damage provision and the contract in question are unconscionable, this Court rejects this assertion in light of the previous conclusion.

*Swanson,* 618 F.Supp. at 1244. To this court, the holding in *Swanson* was clearly appropriate.

While the court is not without sympathy for the defendant, it is bound to follow the laws of the Congress. Therefore, this court holds that the liquidated damages provision contained in the scholarship application does not operate as a penalty and is completely valid and enforceable. Defendant is bound by the terms of the scholarship contract and must abide by them. Defendant admits that she is in breach of her scholarship contract, and this court so holds. There being no genuine issue of material fact as to the validity of the liquidated damages provision of the agreement, the Government is entitled to judgment as a matter of law. Therefore, the Government's motion for summary judgment is GRANTED. The Government is directed to submit a judgment reflecting the opinion of the court and calculating damages as of the date of this opinion.

IT IS SO ORDERED.