JOHN W. AND ELIZABETH HAWRONSKY, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 25597–92.        Filed August 8, 1995.

*J. Michael Weiss,* for petitioners.

---

*Mary K. McIlyar,* for respondent.

COLVIN, *Judge:* Respondent determined a $65,536 deficiency in petitioners' Federal income tax for 1989. After concessions, the only issue for decision is whether petitioners may deduct amounts they paid to the Department of Health and Human Services (HHS) for breaching John W. Hawronsky's (petitioner's) obligation to serve for 4 years in the Indian Health Service after he accepted a scholarship from the Indian Health Services Scholarship Program (IHSSP). We hold that section 162(f) bars petitioners from deducting this payment.

Respondent alternatively contends that petitioners may not deduct any part of their payment to HHS because all of the payment is allocable to petitioner's exempt scholarship benefits under section 265(a)(1). We need not reach this issue in light of our decision on the section 162(f) issue.

Section references are to the Internal Revenue Code in effect during the year in issue, unless otherwise indicated. Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Petitioners are married individuals who resided in Texas when they filed their petition.

1. *Petitioner's Indian Health Services Scholarship*

Petitioner applied for and received a scholarship totaling about $42,000 from the IHSSP to attend medical school as provided in section 104 of the Indian Health Care Improvement Act, Pub. L. 94–437, 90 Stat. 1400, 1403 (1976). The IHSSP required petitioner to sign a National Health Services Corp. (NHSC) scholarship program contract. The NHSC contract contains provisions mandated by 42 U.S.C. sec. 254*l*(f) (1988) for obligated service and a penalty payment if a scholarship recipient fails to complete the period of obligated service. The statute also requires scholarship recipients to be enrolled in an approved course of study until it is completed, to maintain an acceptable academic standing, and then to serve the Indian Health Service for a minimum of 4 years in an area with a shortage of medical professionals. 42 U.S.C. sec. 254*l*(f)(1)(B). In return for petitioner's agreement, the

IHSSP paid petitioner's medical school tuition, fees, educational expenses (books, equipment), and a stipend of $435 per month. 42 U.S.C. sec. 254l(g).

Petitioner's scholarship was exempt from Federal income tax. Act of Oct. 26, 1974, Pub. L. 93–483, sec. 4, 88 Stat. 1457, 1458, as amended by Act of Dec. 29, 1979, Pub. L. 96–167, sec. 9(a), 93 Stat. 1275, 1278 (Public Health Services scholarships are tax exempt under section 117). Petitioners did not include the funds from the IHSSP as gross income on their income tax returns.

## 2. *Petitioner's Breach of His Service Obligation*

Petitioner completed about 1 year and 8 months of the required 4 years of service with the Indian Health Service. Petitioners received and reported taxable income while petitioner worked for the Indian Health Service. Petitioner signed an employment agreement to join a private medical practice, the Dakota Clinic, Ltd. (Dakota), on May 1, 1989. Because petitioner breached his service obligation, he was required to pay treble damages to HHS. 42 U.S.C. sec. 254o(b)(1)(A) (1988). Petitioner paid $275,326.86 to HHS in May 1989. Of that amount, $126,012.64 was trebled principal and $149,314.22 was trebled interest. Petitioners borrowed $285,000 from Dakota to repay HHS.

Petitioner worked for Dakota from May to December 1989. On December 28, 1989, petitioner signed an employment agreement with St. Luke's Tri-State Hospital (St. Luke's). He received a $190,000 signing bonus when he signed. Petitioner worked for St. Luke's from December 1989 to June 1991.

## 3. *Petitioners' 1989 Tax Return*

Petitioners filed a joint Federal income tax return for 1989 which included a Schedule C, Profit or Loss From Business. Petitioners deducted $233,194 of the $275,326.86 petitioner paid to HHS on their 1989 tax return. The $233,194 is the total of three amounts petitioners deducted on their 1989 return. Petitioners deducted $84,008 (two-thirds of the principal amount of their payment to the Public Health Service), as "CONTRACT BUY OUT WITH PUBLIC HEALTH SERVICE" on their Schedule C for 1989. They did not deduct the remaining principal of about $42,000 on their 1989 return. Petitioners

also deducted $98,547 (about 66 percent) of the interest as mortgage interest on the Schedule C and $50,639 (about 34 percent) of the interest as personal interest on the Schedule A attached to their 1989 return. Petitioners reported the $190,000 signing bonus from St. Luke's as income on their 1989 return.

## OPINION

### 1. *Contentions of the Parties*

Petitioners contend that the $233,194 they deducted on their 1989 return is ordinary and necessary expenses of petitioner's trade or business and is deductible under section 162. Respondent contends that petitioners may not deduct, any amount that they paid to HHS because it is a fine or similar penalty under section 162(f) and because it is entirely allocable to income that is exempt from income tax under section 265(a)(1). Petitioners argue that sections 162(f) and 265(a)(1) do not apply here.

### 2. *Application of Section 162(f)*

A taxpayer may generally deduct ordinary and necessary expenses paid or incurred during a taxable year in carrying on a trade or business. Sec. 162(a). However, a taxpayer may not deduct fines or similar penalties paid to a Government for the violation of any law. Sec. 162(f).[1]

Section 162(f) was enacted in 1969. Tax Reform Act of 1969, Pub. L. 91–172, sec. 902(a), 83 Stat. 710. The Senate Finance Committee report accompanying the 1969 Act said that the committee intended the provision to apply if a taxpayer is required to pay a fine because he or she is convicted of a crime. S. Rept. 91–552, at 274 (1969), 1969–3 C.B. 423, 597. The report also said section 162(f) codified "the general court position" relating to the nondeductibility of fines. *Id.*

Section 162(f) applies both to criminal fines and to certain civil penalties.[2] Before 1969, courts had held that taxpayers

---

[1] Sec. 162(f) provides:

SEC. 162(f). FINES AND PENALTIES.—No deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law.

[2] Sec. 162(f) does not define "fine or similar penalty". The regulations thereunder, sec. 1.162–21, Income Tax Regs., provide in relevant part as follows:

§1.162–21. Fines and Penalties.

could not deduct payment of punitive fines or penalties to a government where allowing a deduction would frustrate sharply defined national or State policies proscribing particular types of conduct (public policy doctrine). See, e.g., *Tank Truck Rentals, Inc. v. Commissioner,* 356 U.S. 30, 36 (1958). Before 1969, courts had also disallowed deductions for civil fines and penalties. See, e.g., *McGraw-Edison Co. v. United States,* 156 Ct. Cl. 590, 300 F.2d 453, 456 (1962); *A.D. Juilliard & Co. v. Johnson,* 259 F.2d 837, 844 (2d Cir. 1958); *Tunnel R.R. v. Commissioner,* 61 F.2d 166, 174–175 (8th Cir. 1932).

Section 162(f) bars the deduction of fines and penalties imposed to sanction or punish conduct which a well-defined government policy seeks to proscribe. *True v. United States,* 894 F.2d 1197, 1204 (10th Cir. 1990). Section 162(f) applies to criminal fines and any similar retributive civil penalty intended to sanction prohibited conduct. *Id.; Colt Indus., Inc. v. United States,* 880 F.2d 1311, 1313 (Fed. Cir. 1989); *Bailey v. Commissioner,* 756 F.2d 44, 46–47 (6th Cir. 1985).

The Senate Finance Committee report accompanying the amendments to section 162(f) contained in the Revenue Act of 1971, Pub. L. 92–178, 85 Stat. 497, states that the committee intended section 162(f) to apply to penalties "which are imposed under civil statutes but which in general terms serve the same purpose as a fine exacted under a criminal statute". S. Rept. 92–437, at 73–74 (1971), 1972–1 C.B. 559, 600; see *True v. United States, supra* at 1204 n.15; *Colt Indus., Inc. v. United States, supra* at 1313; *Huff v. Commissioner,* 80 T.C. 804, 822 (1983); *Southern Pac. Transp. Co. v. Commissioner,* 75 T.C. 497, 652 (1980); *Tucker v. Commissioner,* 69 T.C. 675, 679 n.4 (1978).

The treble damages penalty at issue here was a penalty imposed on petitioner because he violated his obligation

---

(a) *In general.* No deduction shall be allowed under section 162(a) for any fine or similar penalty paid to—

(1) The government of the United States * * *;

        \*       \*      \*      \*      \*      \*      \*

(b) *Definition.* (1) For purposes of this section a fine or similar penalty includes an amount—

        \*       \*      \*      \*      \*      \*      \*

(ii) Paid as a civil penalty imposed by Federal * * * law * * *;

        \*       \*      \*      \*      \*      \*      \*

(2) * * * Compensatory damages * * * paid to a government do not constitute a fine or penalty.

under 42 U.S.C. sec. 254*l*(f)(1)(B)(iv). An IHSSP scholarship recipient must agree to serve as a member of the NHSC in a health professional shortage area for the greater of: (a) 1 year for each school year for which the recipient received a scholarship under the scholarship program or (b) 2 years. 42 U.S.C. sec. 254*l*(f)(1)(B)(iv). Petitioner violated his service obligation under 42 U.S.C. sec. 254*l*(f)(1)(B)(iv) by serving only 1 year and 8 months of his 4-year obligation. Thus, treble damages were imposed on petitioner. 42 U.S.C. sec. 254*o*(b)(1)(A).

The treble damages penalty at issue here serves a deterrent and a retributive function similar to a criminal fine. The treble damages amount has no demonstrated relationship to the cost imposed on the Government of replacing petitioner's services. We conclude that it is nondeductible by petitioners because of section 162(f).

### 3. *The Damages Paid by Petitioner Are a Civil Penalty and Are Not Liquidated Damages*

Petitioners argue that their treble damages payment was not a fine paid for the violation of a law and instead was liquidated damages paid for breach of contract. Petitioner argues that the damages are compensatory rather than punitive. We disagree.

Since petitioner was required to sign an NHSC scholarship program contract as a condition of receiving an IHSSP scholarship, petitioner and respondent both rely on cases deciding the rights and obligations of NHSC scholarship recipients as authority to decide this case. Respondent cites cases from the U.S. Courts of Appeals for the Fifth Circuit (to which this case is appealable) and the Ninth Circuit. Those cases establish that an NHSC scholarship recipient's obligations are established by statute, not by contract principles. *United States v. Arron,* 954 F.2d 249, 251 (5th Cir. 1992); *United States v. Melendez,* 944 F.2d 216, 219 (5th Cir. 1991); *United States v. Hatcher,* 922 F.2d 1402, 1406–1407 (9th Cir. 1991); *Rendleman v. Bowen,* 860 F.2d 1537, 1541–1542 (9th Cir. 1988). Congress intended the service obligation of an NHSC participant to be fulfilled except in extreme circumstances. *United States v. Melendez, supra.* The NHSC scholarship program "is not intended '* * * solely to subsidize health

professional education,' but 'as a means to overcome a geographic maldistribution of health professionals.'" *Id.* at 219 (quoting *Rendleman v. Bowen, supra* at 1541 (quoting S. Rept. 94–887, at 201 (1975)), and *Buongiorno v. Sullivan,* 912 F.2d 504, 509–510 (D.C. Cir. 1990)). The national public policy goal of the NHSC scholarship program was to correct the serious problem of geographic maldistribution of health professionals. The Interstate and Foreign Commerce Committee said:

> The geographic maldistribution of health manpower represents one of the most serious barriers to access to quality health care in this nation today. Increases in the supply of health professionals have not led to a more equitable distribution of health manpower, in fact, despite significant increases in total supply, the geographic maldistribution of health manpower has worsened in the past decade. [H. Rept. 94–266, at 22 (1976).]

Petitioners contend that their treble damages payment is compensatory and not punitive. Petitioners rely on four District Court cases which applied contract principles to characterize the NHSC treble damages provision as liquidated damages or as an unenforceable penalty. *United States v. Padavano,* 664 F. Supp. 28, 30 (D. Me. 1987); *United States v. Fowler,* 659 F. Supp. 624, 625 (N.D. Cal. 1987), affd. 849 F.2d 1476 (9th Cir. 1988); *United States v. Hayes,* 633 F. Supp. 1183, 1187 (M.D.N.C. 1986); *United States v. Swanson,* 618 F. Supp. 1231, 1243–1244 (E.D. Mich. 1985). Those cases are unpersuasive here because they were decided before the Courts of Appeals for the Fifth and Ninth Circuits held that statutory intent and not contract principles govern the parties' obligations under 42 U.S.C. 254*o* and that Congress intended treble damages imposed under 42 U.S.C. sec. 254*o* to be an enforceable civil penalty. *United States v. Citrin,* 972 F.2d 1044, 1051 (9th Cir. 1992); *United States v. Arron, supra* at 251; *United States v. Melendez, supra* at 219 (damage provision in sec. 254*o*(b) is of "punitive nature"); *United States v. Hatcher, supra* at 1406–1407; *Rendleman v. Bowen, supra* at 1541–1542. The Court of Appeals for the Ninth Circuit expressed disagreement with District Court cases which viewed the treble damages clauses in NHSC contracts as liquidated damages because they applied a contract instead of a statutory analysis. See *United States v. Citrin, supra* at 1051, stating:

Because statutory principles, not contract principles, apply to the NHSC program, *Hatcher,* 922 F.2d at 1406–07; *Rendleman,* 800 F.2d at 1541–42, we will not examine the damages under the standard used to examine contractual liquidated damages clauses. Instead, because the amount of damages was established by applying the formula in 42 U.S.C. §254*o* (b)(1)(A), we will examine the damages as a statutorily prescribed penalty. [Fn. ref. omitted.]

Petitioners contend that their treble damages payments are liquidated damages which approximate the Government's actual damages. However, the treble damages amount has no demonstrated relationship to the Government's actual damages from the loss of petitioner's services, taking into account the costs of finding a doctor to practice in an underserved area. See *id.* Petitioners cite no authority showing that Congress intended such damage payments to be compensatory rather than penal in nature.

## 4. *Conclusion*

We conclude that section 162(f) bars petitioners from deducting the treble damages they paid to HHS under 42 U.S.C. sec. 254*o* because those treble damages are a civil penalty, punitive in nature, imposed to deter violation of 42 U.S.C. sec. 254*l*(f)(1)(B)(iv).

In light of our holding, we need not decide respondent's argument that petitioners may not deduct any amount they paid to HHS because of section 265(a)(1).

To reflect concessions and the foregoing,

*Decision will be entered under Rule 155.*

