T.C. Memo. 1998-41


UNITED STATES TAX COURT


JOHN DIFRONZO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18476-96.                     Filed February 4, 1998.


<u>Carl M. Walsh</u>, for petitioner.

<u>Warren M. Joseph</u> and <u>Donna C. Hansberry</u>, for respondent.


MEMORANDUM OPINION

RAUM, <u>Judge</u>:  The Commissioner determined a $31,635 deficiency in petitioner's 1993 Federal income taxes.  There are two issues for consideration:  (1) Whether petitioner properly substantiated payment of $125,000 in legal fees to his attorney, and (2) whether those fees, which were paid to defend petitioner, unsuccessfully, against charges of conspiracy and mail and wire

fraud, are, to the extent substantiated, deductible as ordinary and necessary business expenses under section 162(a).[1]  This case was submitted on the basis of a stipulation of facts.

Petitioner, John DiFronzo, resided in River Grove, Illinois, when the petition in this case was filed.  On January 9, 1992, petitioner was indicted by the Grand Jury in the United States District Court for the Southern District of California, Criminal Case No. 92-0026 E.  He was charged with a variety of federal offenses, including mail and wire fraud, and conspiracy to commit mail and wire fraud.

The indictment generally alleged that petitioner and other members of the Chicago organized crime family planned to contract with the Rincon Band of Mission Indians to control gambling operations on the Rincon Indian Reservation.  The defendants meant to conceal that the money they invested came from the Chicago organized crime family.  The defendants intended to structure the operation so as to maximize their profits.  They intended to skim profits from the operation without the knowledge of the Rincon Indians.  They also intended to use the operation to launder the proceeds from other illegal enterprises of the Chicago organized crime family.

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner was found guilty of conspiracy and substantive counts of mail and wire fraud. On May 25, 1993, he was sentenced to 37 months' imprisonment, a $10,000 fine, and a $200 special assessment. Petitioner subsequently filed an appeal with the Court of Appeals for the Ninth Circuit. On May 24, 1994, the Ninth Circuit affirmed petitioner's conviction but reversed the sentence and remanded for resentencing. On July 18, 1994, petitioner was resentenced to 16 months' imprisonment, a $10,000 fine, and a $200 special assessment.

On his 1993 Individual Income Tax Return, petitioner took a deduction of $125,000 for "Legal fees incurred in the defense of indictment no CR92-62-WBE in the United States District Court for the Southern District of California in which taxpayer was convicted of mail fraud. Deduction pursuant to IRC section 162 and Commissioner v. Tellier 383 U.S. 687 (1966)." Petitioner's filing status was married filing separate. On May 28, 1996, the Commissioner issued a notice of deficiency to petitioner disallowing the $125,000 deduction.[2]

1. Substantiation

Petitioner deducted $125,000 in legal fees on his 1993 return. His substantiation consists of three sets of documents.

_____

[2] A number of other issues were raised in the notice of deficiency. However, they appear to have resulted from the disallowance of the deduction for legal fees. Both parties argued only the deductibility of the legal fees in their briefs and trial memoranda.

First, there is a cashier's check for $50,000 made out to Carl M. Walsh and remitted by John DiFronzo. The check is dated January 18, 1993. With it is a deposit slip for Carl M. Walsh dated January 25, 1993. Among the checks listed for deposit is one for $50,000.

Second, there is a check for $25,000 from RoseMary DiFronzo made payable to Carl M. Walsh. That check is dated April 9, 1993 and is payable from the account of RoseMary DiFronzo. On April 12, 1993, a deposit was made on behalf of Carl M. Walsh. Included in that deposit was a check for $25,000. Third, there is a deposit slip from Carl M. Walsh dated May 11, 1993. Only one check is listed, for $50,000. The deposit slip is accompanied by two check stubs from the register of Carl M. Walsh. Beside check stub 535, dated May 15, 1993, there is a notation under deposits "5/11/93 DiFronzo 50,000".

Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business". For a deduction for legal expenses, the taxpayer must also prove that he paid for the services performed for him. Lussy v. Commissioner, T.C. Memo. 1995-393, affd. without published opinion 114 F.3d 1201 (11th Cir. 1997). Petitioner's filing status is married filing separate. As a result, he must demonstrate that he alone made all of the payments.

Here, there is no evidence that the $25,000 check signed by RoseMary DiFronzo was from any source other than her.  There is also nothing in the record indicating that petitioner paid the second $50,000.  The deposit ticket with its vague notation (DiFronzo) is not adequate proof that petitioner actually paid the check in view of our finding that RoseMary DiFronzo made the $25,000 payment.  Accordingly, petitioner has adequately substantiated only $50,000 of the $125,000 deduction.

2.  Deductibility of legal fees

The origin and character of the claim with respect to which legal fees are incurred controls whether the expense is a deductible business expense or a nondeductible personal expense. United States v. Gilmore, 372 U.S. 39, 49 (1963).  In Commissioner v. Tellier, 383 U.S. 687 (1966), the taxpayer underwrote public stock offerings and bought securities to resell to customers.  He was convicted of violating the fraud section of the Securities Act of 1933, mail fraud, and conspiracy to violate those statutes.  He spent $22,964 in legal fees during 1956, which amount he deducted on his income tax return for that year. Id. at 688.  The Supreme Court held that the taxpayer's legal fees were deductible.  "The criminal charges against the * * * [taxpayer] found their source in his business activities as a securities dealer.  The * * * [taxpayer's] legal fees, paid in defense against those charges, therefore clearly qualify under

Gilmore as 'expenses paid or incurred * * * in carrying on any trade or business' within the meaning of section 162(a)." Id. at 689.

The criminal convictions in this case provide proof of petitioner's involvement in an illegal trade or business. The indictment alleges that

> 6. The Chicago organized crime family obtained income through the pursuit of a variety of illegal activities, including but not limited to bookmaking, loansharking, extortion, illegal gambling, trafficking in stolen property, and fraud, and would travel in interstate commerce in furtherance of those activities.

It also alleges that petitioner was a "crew chief", or a mid-level leader in the Chicago organized crime family. The indictment chronicles petitioner's involvement in one particular money-making scheme. Specifically, petitioner and his confederates planned to invest money in a gambling operation without disclosing to the Rincon Indians that the money came from the Chicago organized crime family. They planned to structure the gambling operation in such a way that the crime family would maximize its profits at the Indians' expense. They also planned to skim profits and use the operation to launder funds from other illegal activities of the crime family.

The criminal charges against petitioner originated from his business activities as a member of the Chicago organized crime family. His legal fees, incurred in defense of those charges, are deductible under section 162(a).

The Government contends that petitioner was not engaged in a trade or business. According to the Government, petitioner merely conspired to set up a gambling operation with the Rincon Indians. The Government characterizes this as "a mere expectation" of a future business that is not deductible. See Ellis v. Commissioner, T.C. Memo. 1967-94 (expenses for a business that never materialized were not deductible).

As we indicated above, petitioner's trade or business consisted of furthering the interests of the Chicago organized crime family. These interests, as listed in the indictment, included bookmaking, loansharking, extortion, illegal gambling, and fraud. The Rincon gambling operation was one such endeavor. And while it is true that an expense incurred in a mere expectation of a future business is not deductible, an expense incurred from an activity entered into with the genuine intention of making a profit is. International Trading Co. v. Commissioner, 275 F.2d 578, 584 (7th Cir. 1960), affg. T.C. Memo. 1958-104. Petitioner entered into the Rincon gambling operation with the genuine intention of making a profit.

The Government also relies on Accardo v. Commissioner, 942 F.2d 444 (7th Cir. 1991), affg. 94 T.C. 96 (1990). In Accardo, the taxpayer was indicted but acquitted of racketeering charges. Id. at 446. He attempted to deduct his legal fees from the RICO prosecution. The taxpayer could not validly claim a deduction

under section 162(a) because he was acquitted of being engaged in the racketeering business. He turned instead to section 212(2).[3] He claimed he was entitled to a deduction because he was protecting certain certificates of deposit from forfeiture. Under the RICO statute, assets purchased with racketeering funds are subject to forfeiture. Id. at 446-448. The Seventh Circuit denied the deduction on the ground that, because petitioner was acquitted, and because the certificates of deposit were not obtained with the proceeds of the alleged racketeering activities in any event, there was no nexus between the certificates and the racketeering legal expenses. Id. at 449.

The Government interprets Accardo to mean that Accardo's fellow defendants there were entitled to deduct their legal fees because they were involved in the racketeering business and their property was subject to forfeiture and seizure. The Government attempts to distinguish petitioner's case on the basis that his property was not subject to forfeiture and seizure. In its brief, the Government also relies on the differences in the statutes themselves: "Unlike the racketeering statute, which

---

[3] Sec. 212(2) provides:
In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year--

    \*    \*    \*    \*    \*    \*    \*

(2) for the management, conservation, or maintenance of property held for the production of income;

refers to receiving income from racketeering activity, the conspiracy statute uses only the word 'conspire'. See 18 U.S.C. 1962 and 371. Conspiring to commit an offense is not the equivalent of engaging in a business activity."

The Government places too much emphasis on the forfeiture and seizure provisions. The forfeiture provisions were discussed in Accardo because the risk of forfeiture was integral to the taxpayer's claim of a deduction under section 212(2). Id. at 447. Those provisions have no bearing here, since petitioner's claim for deduction is pursuant to section 162(a). Moreover, the statute itself is not determinative of petitioner's business activity. Rather, the indictment chronicles a business transaction undertaken by petitioner as a member of the Chicago organized crime family. Petitioner's involvement in this business was confirmed by his criminal conviction.

Although it would seem contrary to public policy to allow a deduction in the conduct of an illegal and highly reprehensible criminal activity, it has been established that such is not sufficient to deny a deduction otherwise allowable. See Commissioner v. Tellier, 383 U.S. at 691-695; Commissioner v. Sullivan, 356 U.S. 27, 27-29 (1958); Brizell v. Commissioner, 93 T.C. 151, 166 (1989); O'Malley v. Commissioner, 91 T.C. 352, 362-366 (1988). True, the payment of expenses in such activity may not be deductible where the expense itself is illegal, see secs.

162(c),(f); <u>Hawronsky v. Commissioner</u>, 105 T.C. 94, 97-101 (1995), affd. without published opinion 98  F.3d 1338 (5th Cir. 1996); <u>Tippin v. Commissioner</u>, 104 T.C. 518, 528 (1995); <u>Zecchini v. Commissioner</u>, T.C. Memo. 1992-8, but the payment here of legal expenses is no more illegal than the payment of rent or utility charges.

To the extent that petitioner has established the payment of the legal fee in question, we hold that he is entitled to the claimed deduction.

<u>Decision will be entered</u>

<u>under Rule 155</u>.